JOHN H. HANNA v. FRITZ LADEWIG ET AL.

No. 2669.

**Wills.**—A will vested in the widow of the testator title to certain real estate, and de-
clared that she should have power to "absolutely dispose of it according to her pleas-
ure," and to "sell and convey or will and bequeath the same." It further provided
that on the failure of the surviving widow to make a "full disposition" of the property
during her lifetime, that it should descend to other designated parties. She owned in
her own right a community interest in the property. During her life she conveyed
all her "right, title, and interest, either in law or equity," to the property by war-
ranty deed, and it was afterwards reconveyed to her. *Held:*

1. The deed from the surviving widow operated to vest the title in the grantee
named therein, and this whether the deed was voluntary and without consideration or
not, and was not only an execution of the power conferred in the will, but passed her
life estate and community right to the land.

2. No matter from what motive or on what consideration her deed was made, her
power under the will being thus exercised the rights of the residuary legatees were for-
ever cut off, and the fact that the land was afterwards reconveyed to the widow was
unimportant.

APPEAL from Lavaca.    Tried below before Hon. Geo. McCormick.

This suit was brought by plaintiffs, John W. Hanna, Silas Hanna, and
Ella Goodrich, joined by her husband, as surviving children of John W.
Hanna, and their mother, Mrs. Tennie Hanna, as surviving widow of
said J. W. Hanna, said John W. Hanna being legatee named in last will
of Walter Hinkly.

Emily J. S. Baylor, joined by her husband John R. Baylor, also sued,
Emily J. S. Baylor being one of the legatees named in last will of said
Walter Hinkly. By agreement of counsel and order of court the two
cases were consolidated and tried as one cause. Plaintiffs claimed an
undivided one-half interest in the land in controversy under will of Wal-
ter Hinkly.

1. Plaintiffs contended that the will of Hinkly left their mother only
a life estate in the land in controversy with power of disposition.

2. That upon the death of their mother the property passed to them.

3. That the land in litigation had not been disposed of at the death
of their mother, in execution of the power vested in her by Hinkly's will,
and hence vested in them.

Defendants answered, setting up by metes and bounds the several por-
tions claimed, and pleaded "not guilty," and set up statute of limita-
tions of three, five, and ten years and improvements in good faith, and
claimed that Mrs. McElroy, the surviving wife of Walter Hinkly, took
absolute fee under the will of Hinkly, and if this be not true that she
executed the power of disposition and passed the fee by deed and by will.

Appellants made the following assignment of errors:

1. The court erred in admitting in evidence the deed from Mrs. Eliza-
beth McElroy to Z. N. Hanna, of date December 19, 1865.

2. The court erred in admitting in evidence the sheriff's deed to Mrs. M. L. Searcy and the execution under which the sales were made.

3. The court erred in admitting in evidence each and every link in the pretended title emanating from and under Z. N. Hanna.

4. The court erred in refusing to admit in evidence the testimony of witness T. B. Coleman and other witnesses that plaintiffs had offered on the said point, to prove the fraudulent intent and character of the deed from Mrs. McElroy to Z. N. Hanna.

5. The court erred in its fourth finding of facts in finding that by said deed to Z. N. Hanna and by her last will she disposed of said property.

6. The court erred in its conclusions of law in holding that the deed to Z. N. Hanna and the last will of Mrs. McElroy was an execution of the power of disposition given in the will of Walter Hinkly.

The character of the will and deeds are stated in the opinion.

*J. B. Scarborough,* for appellant.—It was error to admit in evidence the deed from Mrs. McElroy to Z. N. Hanna and the title emanating under it; first, because it only attempted to convey what title she had, to-wit a life estate; and second, because it had its inception and consummation in fraud, and hence is void.

Fraud vitiates every transaction, and full proof should be heard in support of an allegation of fraudulent conveyance. 2 Pomeroy's Eq., p. 421, and note.

Mrs. McElroy (formerly Hinkly) took only life estate in the property left by will of Hinkly, with power of disposition. 62 Texas, 1; 55 Texas, 154; 58 Texas, 252; 69 Texas, 227; 93 U. S., 327; 92 Illinois, 515.

Mrs. McElroy could only convey the fee in said property by an execution of the power given her in said will, the rule being "both as to deeds and wills, that if there be an interest and a power existing together in the same person over the same subject matter, and an act be done without a particular reference to the power, it will be applied to the interest and not to the power. If there be any legal interest on which the deed or will can attach it will not execute the power." 62 Texas, 14, and authorities there cited; Jarman on Wills, 628, and authorities; 2 Story's Eq., 11 ed., pp. 315, 316, 317, and notes.

The will of Mrs. McElroy attached to and passed her interest in the property and did not execute the power.

It is a fundamental rule in the construction of wills that the intention of the testator as it appears upon the face of the will must be enforced, and no change can be made unless the error and the correction of it appear with certainty on the face of the will itself. 69 Texas, 227; 62 Texas, 1; Schouler on Wills, secs. 476, 477, and note; Pomeroy's Eq., secs. 1060, 1023; 2 Story's Eq., pp. 315, 316, 317.

*Ellis & Patton* and *Ellis & Archer,* for appellees.—It is immaterial whether the deed from Elizabeth McElroy to Z. N. Hanna was fraudulent or not; or if fraudulent whether M. L. Searcy, the purchaser at the sheriff's sale, had notice thereof. The right of such purchaser and those claiming under her would depend upon the validity of the creditor's lien acquired by the levy of the execution and the question of notice to such creditor. Grace v. Wade, 45 Texas, 522; Borden v. McRea, 46 Texas, 401; Grimes v. Hobson, 46 Texas, 418; Cavanaugh v. Peterson, 47 Texas, 207, and authorities therein cited; Wallace & Co. v. Campbell, 54 Texas, 89, 90.

A fraudulent conveyance is valid and binding between the parties to it, and against all other parties except creditors and subsequent purchasers without notice. Seligman & Houghton v. Wilson, 1 W. & W. Ct. App. C. C., sec. 896; McClenney v. McClenney, 3 Texas, 196; Walcot v. Brander, 10 Texas, 423; Bump. on Fraud. Con., 451; 29 Barb., 105; Howard v. Carusi, 109 U. S., pp. 725–34; 2 Redf. on Wills, 3 ed., 348–9; Wegr. on Wills, 2 Am. ed., part 2, pp. 89, 224; Barnett v. Deturk, 43 Pa. St., 92.

In the construction of a deed claimed to have been made in the execution of a power, as well as in the construction of a will, the intent of the donee of the power is to be ascertained. The court is governed by the intention of the parties without regard to the form of the instrument, so as to pass the whole interest the grantor has in the premises, whether derived from an appointment or in his own right. If the donee of the power intends to execute, and the mode be in other respects unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. This intention is to be ascertained—

1. By some reference to the powers in said instrument.

2. By some reference to the subject over which the powers extend.

3. When the provisions of the instrument executed by the donee of the power would be a nullity or ineffectual if not an execution of the power.

4. By reference to all the facts and circumstances surrounding the donee of the power at the date of the execution of the instrument calculated to throw light upon the question of intent. Hough v. Hill, 47 Texas, 155, and authorities therein cited; Warner v. Connecticut Life Ins. Co., 109 U. S., 357–371; Blake v. Hawkins, 8 Otto (U. S.), 315, 331; 1 Redf. on Wills, 4 ed., p. 272; Powell on Powers, 111; 2 Storey's Eq. Jur., 6 ed., p. 451, note 1, and authorities therein cited; 2 Sugden on Powers, 7 Lon. ed., ch. 6, sec. 8, p. 412; 2 Chance on Powers, Lon. ed., 1831, sec. 1597, p. 72; Allison v. Kurtz, 2 Watts, 189; Robbins v. Bellas, 4 Watts, 256; Newman v. Keffer, 9 Casey, 442.

STAYTON,. CHIEF JUSTICE.—Walter Hinkly died testate as early as August, 1852, and applicable to the two tracts of land in controversy in this consolidated action the will contains the following provisions: "It is my will that my wife Elizabeth be my executor of this my last will and testament and of all the codicils thereto, and as such she have, hold, and enjoy during her full and entire life all my property, real and personal, now owned or hereafter acquired, whether in possession or in action, and retain the same in her hands and possession and at her sole and entire disposal during such life, except as hereinafter excepted, without any accountability to any person whomsoever in the character of my heir or otherwise howsoever; * * * and with full and ample power hereby given to appoint one or more executors to succeed her in all her powers and rights and powers and privileges as she may by her will and testament from time to time appoint, direct, and bestow, *and absolutely to dispose of my said property, real and personal, aforesaid,* except as only hereinafter excepted, *and all the right, title, and interest in possession, reversion, or remainder which I have or at the time of my death may have of, in, and to any personal or real property, lands, tenements, hereditaments, negroes, or annuities or rents charged upon or arising out of them, and sell and convey or will and bequeath the same according to her pleasure.*"

Then followed a specification of the property excepted from the foregoing provisions of the will, and a disposition otherwise of this excepted property, after which the will proceeds as follows:

"It is my will further, though this is not to be considered one of the exceptions aforesaid, that upon the failure of my said wife Elizabeth to make during her life a full disposition of my said property as aforesaid, in the manner aforesaid, and upon the terms aforesaid, with the exceptions aforesaid, all the property, rights, etc., hereinbefore or other whatsoever descendable from me so undisposed of as aforesaid, shall descend and go in parcenary to, and all the rights, title, and interest thereof and therein be fully vested in four of the children of my said wife Elizabeth, to-wit, Mary Louisa Hanna, John Warren Hanna, Silas H. Hanna, and Emily J. S. Baylor, wife of John R. Baylor, and the heirs of their bodies, at and immediately upon the death of my said wife."

The plaintiffs in these consolidated actions are Mrs. Emily J. S. Baylor and the children and widow of John Warren Hanna, and whatever right they have is derived through that part of the will above quoted.

One of the tracts affected by the part of the will set out was a part of the Ponton grant containing 850 acres, and this was community property of the testator and his wife Elizabeth, and the other was all or a part of a league of land granted originally to Martha Lyons, of which Walter Hinkly had, however, become the owner in his own separate right.

The rights of the plaintiffs depend on the fact whether Mrs. Hinkly

ever executed the power conferred upon her by the will of her husband; and in disposing of that question, as it will be the most favorable position for appellants, we will assume that under the will of her husband Mrs. Hinkly only took a life estate in her husband's interest in the two tracts of land, with absolute power to dispose of them during her life by deed and at death by will.

It is claimed by the defendants that she executed this power through a deed which she made to Z. N. Hanna on December 19, 1865. She executed a deed of that date whereby for a consideration of $14,000, which according to the recitals of the deed consisted of the satisfaction and cancellation of two notes for that sum theretofore executed by her to Z. N. Hanna for borrowed money, she conveyed to him the two tracts of land in controversy and a large amount of personal property.

In that deed the two tracts of land are particularly described, and there is no claim but that it conveys in the most unqualified terms the 850 acres of the Ponton grant. It is claimed, however, that this deed only conveyed the interest of Mrs. Hinkly in the Lyons league, which it is assumed was only a life estate.

The language of the deed bearing on that question is as follows: "The other tract of land which I hereby convey to the said Hanna, for the consideration herein mentioned, is all the right, title, and interest which I have either in law or equity in and to the Lyons league, it being the place on which I have resided for many years, and particularly all that I may have acquired by virtue of a deed of the same from Martha Lyons to Walter Hinkly, my former husband, of date October 26, A. D. 1851, which is recorded in the office above referred to (office of county clerk of Lavaca County) in book A, page 568. This is the league of land patented by the Republic of Texas to Martha Lyons on the 26th day of February, 1841, and lies on the Lavaca River, in the said county of Lavaca, State of Texas, and for a more accurate description thereof reference is made to the said patent."

Then follows a particular description of four tracts of land which are excepted from the operation of this deed, but are not in controversy in this cause, they having been previously conveyed.

The deed then proceeds as follows: "These four last described and bounded tracts which contain (1796 7-16) one thousand seven hundred and ninety-six and seven-sixteenths acres, which are contained and embraced in the two first mentioned tracts this day hereby conveyed by me to the said Z. N. Hanna, and which have been previously transferred by me and others to the parties herein mentioned (corners of four tracts described), are expressly excluded and do not pass by this conveyance, *but I do hereby grant and release all the balance of the said tracts, together with all and singular the rights, members, hereditaments, and appurtenances to the same belonging or in any wise incident or appertaining, to*

*have and to hold all and singular the premises above mentioned unto the said Z. N. Hanna, his heirs and assigns forever."*

Then follows a clause which was evidently intended for a general warranty, but from which one or two words usual seem to have been omitted.

A further consideration stated for this deed was that Z. N. Hanna was to supply its maker, who was his mother, with suitable support so long as she should live. Although the arrangement of this deed is somewhat unusual, its language shows clearly that it was the intention of its maker to convey the two tracts of land therein described, less the tracts excepted, and that it was not her intention to convey only a life estate or other estate less than the fee.

It is shown that Mrs. Hinkly had no interest in the two tracts thus conveyed by her except her community interest in the Ponton grant, and such interest as she took under the will of her husband, which appellants insist was only a life estate, and that she had no power to convey what her deed purports to convey other than that conferred upon her by the will of her husband, and so standing the facts it must be held that her deed operates as an execution of the power conferred upon her by her husband as well as to pass her life estate and her community right in the Ponton grant.

It is claimed, however, by appellants that while such may be the effect of the deed, as on its face it appears, it was in fact made without consideration and with intent on the part of Mrs. Hinkly to place the property beyond the reach of her creditors, and that for this reason it is void and inoperative as an execution of the power.

They proposed to prove that the deed was without valuable consideration, but upon objection their evidence was excluded.

The title to the lands thus stood in Z. N. Hanna until some time in the year 1868, when he reconveyed to his mother all the property embraced in the conveyance to himself.

· The power conferred· on Mrs. Hinkly by the will of her husband was as broad as could well be conceived, and no limitation was placed on its exercise other than such as her own wish and pleasure might dictate.

The will declared that she should have power to "absolutely dispose" of the property, not for some specific purpose pointed out by the testator, but "according to her pleasure."

She was empowered to dispose of it by will, which evidences the intention of the testator to confer upon her the power to make a voluntary disposition as well as one upon valuable consideration, and there is nothing in the context to indicate if she disposed of the property otherwise than by will that a voluntary conveyance should not be made.

Appellants do not stand as creditors or persons having fixed rights in the property, not to be divested unless by a conveyance made on valuable consideration Mrs. Hinkly felt compelled for her own support or any

other consideration to sell it. Whether they should ever receive or become entitled to the property Walter Hinkly made dependent on the volition, pleasure, and act of his wife, who was the mother of the persons. who were to take if the wife did not execute the power conferred on her.

Speculation as to why he conferred on her such a power would be unprofitable, but it is likely that he felt he could safely entrust to the: mother a power in the non-exercise of which her own children were interested. She having exercised the power conferred upon her, through whatsoever motive or upon whatsoever consideration, their contingent right was forever cut off when it was once exercised, and the fact that the property was reconveyed to her is a matter of no importance.

The case of Barnett v. Deturk was very similar to that before us. In that case it appeared that a father by will gave land to his son Stephen, but provided that if he should die without issue then the land should vest in three other sons named. The will, however, contained a clause as follows: "Provided said Stephen shall not make sale of the aforesaid property. If he, the said Stephen, should sell the aforesaid property he may grant and assign as he likes." Stephen conveyed the land to his brother Daniel, who soon after reconveyed to him, and both deeds purported to be upon valuable consideration, but it was shown that they were not. Stephen died testate, and by his will devised the land to Deturk, against whom an action was brought by the brothers who under the will of the father would have taken but for the conveyance made by Stephen to Daniel, and it was held that the conveyance made under the power given to Stephen by the will of his father cut off all right of the other brothers under the will; that the fact of reconveyance to Stephen was unimportant, and that both conveyances were voluntary was a matter of no consequence. 43 Pa. St., 92.

The views already expressed are decisive of this case, and it becomes unnecessary to consider whether the will of Mrs. Hinkly, who became Mrs. McElroy before her death, would have been a complete execution of the power conferred upon her by the will of Walter Hinkly.

The plaintiffs showing no title in themselves, it is unnecessary to consider other questions presented in the record.

There is no error in the judgment and it will be affirmed.

*Affirmed.*

Delivered February 15, 1889.