CRAGIN et al. v. FROST NAT. BANK et al.

No. 11199.

Court of Civil Appeals of Texas.
San Antonio.

July 8, 1942.

Rehearing Denied Aug. 5, 1942.

S. J. Brooks, Clinton G. Brown, and Harper Macfarlane, all of San Antonio, for appellants.

Swearingen & Miller and S. S. Searcy, all of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by Frost National Bank, a national banking corporation, suing in its capacity as independent executor of the will and estate of Mary Jewett Wilson, deceased, seeking a construction by the court of the wills of Edward Allen Wilson and his wife, Mary Jewett Wilson,

and in that connection propounded the following three questions, to-wit:

1. Did Edward Allen Wilson, by the terms of his will, give to his wife, Mary Jewett Wilson, a life estate only with the power of appointment with respect to the balance of his estate remaining at the date of her death?

2. Did Mary Jewett Wilson, by the terms of her will, exercise this power of appointment with respect to the balance of the estate of Edward Allen Wilson, deceased, remaining at the date of her death? and

3. If so, to what extent?

The case was submitted to the trial court without the intervention of a jury and resulted in the following construction of the will, to-wit:

"That said will of Edward Allen Wilson be, and it is hereby, construed and interpreted, in consequence of the performance of the conditions therein prescribed, which conditions the court adjudges to have been performed, to have vested absolute, unqualified, fee simple title to the entire estate of Edward Allen Wilson, deceased, in his surviving widow, Mary Jewett Wilson.

"That said will of Mary Jewett Wilson be, and it is hereby, construed and interpreted to have passed and disposed of her entire estate, which estate at the time of her death the court adjudges to have been comprised and composed of all community property owned by Edward Allen Wilson and Mary Jewett Wilson at the time of his death, which remained in her hands at the time of her death, and all property acquired by her after his death, whether from the proceeds of the sale by her of such community property or otherwise.

"That Mary Jewett Wilson meant and intended, by the words of her will of June 20, 1933, read in the light of all the surrounding facts and circumstances, to dispose, and did dispose, as an entity and entirety and as one estate, of all the property in her hands at the time of her death, including what, during the life of her husband, had been his community one-half (1/2) interest, as well as what had been her community one-half (1/2) interest, together with all property acquired by her after his death, whether from the proceeds or income from community property or otherwise."

From this judgment Minnie Wilson Cragin and ten other beneficiaries under the will of Edward Allen Wilson have prosecuted this appeal.

The parties hereto agree that there are two main questions to be decided, first, what is the character of the estate received by Mary Jewett Wilson under her husband's will? and, second, if it was a life estate with power of appointment, did Mary Jewett Wilson exercise that power of appointment?

The paragraphs of Mr. Wilson's will to be construed read as follows:

· "Article Second. I give, devise and bequeath to my wife, Mary Jewett Wilson, all my property of whatsoever description and wheresoever situated, with full power to use and dispose of the same and to make testamentary disposition thereof, in any manner that she may think proper, subject only to the proviso contained in Article Fourth of this instrument. * * *

"Article Fourth. The gift hereinbefore made to my wife in Article Second is subject to this condition: that if my said wife shall survive me and if at her death she shall not have left a legally executed will dated after my decease, then the gift made in her favor shall be limited to a life estate with power of disposition: that is to say, whatever portion of my estate remains in her hands at the time of her death and has not been disposed of by her by a will dated after my death shall be distributed as hereinbefore provided in Article Third. In the event of such distribution, if any person named by me as a legatee in Article Third shall have died before me or before the death of my wife the sum bequeathed to such person shall be paid to the legal heirs of such person according to the laws of the state in which such person shall be domiciled at the time of such person's death. Nothing contained in this instrument shall affect or diminish the power of my said wife to have, use or dispose of all or any part of my estate."

█ The first question to be discussed is, Did Mrs. Wilson under her husband's will receive a fee estate or only a life estate? This question should be answered from a consideration of the four corners of the will, if it can be done, and only if the meaning of the will in this particular is ambiguous, should extraneous evidence be resorted to.

█ It seems to us that what Mr. Wilson intended is clear from the instrument itself. Mr. Wilson intended that his wife

should have the right to use, enjoy and dispose of his property during her lifetime, and should also have the right and power to dispose of his property after her death by leaving a will, but that in no event should his property ever be inherited under the laws of descent and distribution by his wife's heirs. In other words, he intended that his wife should have the full enjoyment of his property, the same as if she owned it in fee simple absolute, with the one exception, that it could never pass to her heirs under the law of descent and distribution.

Appellees suggest the possibility of four different kinds of estates which may have been created in Mrs. Wilson, and have drawn a diagram illustrating these four different estates. We here copy that diagram.

■ If Mr. Wilson intended to create a life estate in Mrs. Wilson he could have done so simply by saying so in the first paragraph of his will, and then have added the power of appointment. If he had done this then there could have been no question, because, as said by Justice Stayton in Weir v. Smith, 62 Tex. 1:

"The general rule is, that if a particular estate is expressly created, with a general power of disposition to the person to whom such estate is given, then the power will not enlarge the estate given."

Mr. Wilson did not follow this course. He first used language which conveys the idea that Mrs. Wilson was to become the absolute owner of his property; nothing is said about a life estate, unless she fails to make a will and then, and in that event, she is to have only a life estate. This con-

Type 1             Fee Absolute

Type 2     Life Estate          Vested Remainder

Type 3   Conditional Fee      Fee Absolute      Contingent Expectancy

Type 4   Life Estate        Power of Appointment      Vested Remainder

Appellants contend that the grant here to Mrs. Wilson was not a fee absolute, and in this appellees concur, therefore, Type 1 can be eliminated.

Appellees contend that the grant to Mrs. Wilson was not a life estate with an absolute and unqualified vested remainder, without power of appointment, and in this appellants concur, so Type 2 may be eliminated.

Thus Type 3 presents the contention of appellee Yale University and Type 4, the contention of appellants. In other words, Yale University contends that Mrs. Wilson took a conditional fee in the property of Mr. Wilson and that appellants had only a contingent expectancy, while appellants contend that Mrs. Wilson took only a life estate with a power of appointment and they took a vested remainder. The question is, which of these two contentions is correct?

veys the idea that Mr. Wilson was under the impression that he had provided for a conveyance to Mrs. Wilson of an estate greater than a life estate, but which should be reduced to a life estate in the event she did not execute a will after his death disposing of the property she had received under his will.

Appellants seem to agree that if Mr. Wilson had stated any condition other than the making of a will, Mrs. Wilson would have received an estate greater than a life estate, but they say, when he required her to make a will he, in effect, provided that her heirs should never inherit his estate, and before there can be a grant of a fee there must be a grant of an estate that may pass on to the heirs of the grantee.

■ It is true that before there can be a grant of an absolute fee there must be a grant to a person and his heirs. Art. 1291, Vernon's Ann.Civ.Stats., does away with

the necessity of using the word heirs in the conveyance, but it does not change the rule that a fee simple estate is one of inheritance.

We do not believe that the same thing is true of a conditional fee. A conditional fee is defined by Bouvier, 1 Bouv.Law Dict., Rawle's Third Rev., p. 1199, as one "that is either to commence or determine on some condition." In 69 C.J. § 1558 c. 484, it is said:

"* * * Where an estate is devised in language sufficient to create a fee simple absolute, and a subsequent provision is made in the will for a gift over on the happening of a future event or contingency, the subsequent provision will have the effect of modifying the estate already devised, to make it a defeasible fee, * * *. The fact that an estate is devised as a defeasible fee, with a limitation over upon an event or contingency which may never happen, does not reduce the defeasible fee to a lesser estate, since the entire estate continues in the first devisee unless the event or contingency occurs upon which the limitation over is to take effect. * * *"

In 21 C.J. page 922, it is said:

"Although distinctions have been made or discussed by some authorities, the terms 'base fee,' 'qualified fee,' and 'determinable fee' are generally used interchangeably to denote a fee which has a qualification subjoined thereto, and which must be determined whenever the qualification annexed to it is at an end. This estate is a fee, because by possibility it may endure forever * * *; yet as that duration depends on the concurrence of collateral circumstances which qualify and debase the purity of the donation it is therefore a qualified or base fee. * * *

"Until its determination such an estate has all the incidents of a fee simple, and while this estate continues, and until the qualification upon which it is limited is at an end, the grantee or proprietor has the same rights and privileges over his estate as if it was a fee simple. * * *" See also 31 C.J.S., Estates, § 10.

In 28 R.C.L. page 241, it is said: "Although an estate in fee simple is devised, it may be limited by a subsequent valid provision that the estate shall go over to others upon the happening of a certain contingency. The estate, when so limited, is still a fee, for the reason that it will last forever if the contingency does not happen, but so long as it is possible that the contingency may happen, it is a base or determinable fee. * * *"

A conditional fee is recognized in Texas, 17 Tex.Jur. p. 110.

The Texas decisions describing, defining and discussing a conditional fee are numerous. They include West v. Glisson, Tex.Civ.App., 184 S.W. 1042, error refused; Lockett v. Wood, Tex.Civ.App., 84 S.W.2d 798, affirmed Peden Iron & Steel Co. v. Lockett, 131 Tex. 287, 115 S.W.2d 405; Federal Land Bank v. Little, Tex. Civ.App., 79 S.W.2d 645, affirmed 130 Tex. 173, 107 S.W.2d 374; Haring v. Shelton, 103 Tex. 10, 122 S.W. 13; Warlicke v. Davis, Tex.Civ.App., 89 S.W.2d 845, writ refused; McDowell v. Harris, Tex.Civ. App., 107 S.W.2d 647, writ dismissed; Foote v. Foote, Tex.Civ.App., 76 S.W.2d 194, writ dismissed.

The above authorities would settle this case but for one point. The condition imposed is in effect that the property shall never be inherited by the heirs of Mrs. Wilson as such. She could devise the property to them, but they could never take it simply as her heirs. In other words, if Mr. Wilson had named any other condition than the one he did name, then there could be no question about a conditional fee having been established. Stating the proposition a little differently, is it possible for a grant to be a fee when it can never descend to the heirs of the grantee? We think it can. It can never be an absolute fee unless it may pass to the grantee and his heirs, but the same thing is not true of a conditional fee. Where the language of the instrument is sufficient to show that it is the intention of the grantor to convey absolute title to the grantee to be defeated only in the event that the grantee should die still seized with all or a part of the property and intestate as to such property, a conditional fee is created rather than a life estate. There is nothing that we have found which requires that a conditional fee must be capable of passing to the grantee's heirs. It is sufficient if it may continue forever but for the happening of the condition which will terminate it.

We have found no Texas case directly in point. The case of Foy v. Foy, 188 N. C. 518, 125 S.E. 115, 117, is in point. We quote the following from that opinion:

"By the residuary clause (item VIII) in his will, Joseph T. Foy devised the

eight lots of land, described in the complaint, to Nora D. Foy, in fee simple. By the 'limitations and directions' contained in item IX of said will, her estate in fee simple was defeasible, upon the happening of the contingency as stated therein, to wit: 'Should she die intestate after my death, seized in fee simple or absolutely, of any of the property devised to her' in said item VIII. Nora D. Foy took an estate in fee simple in said lots of land, defeasible upon her dying, after the death of Joseph T. Foy, intestate. Fellowes v. Durfey, 163 N.C. 305, 79 S.E. 621. This event did not happen, for she did not die intestate."

■ In view of the provisions of Article 1291, Vernon's Ann.Civ.Stats., "Article Second" of Mr. Wilson's will was sufficient to convey his property to Mrs. Wilson in fee simple, subject only to the condition expressed in "Article Fourth" which was, should she die without executing a will dated after his death and possessing some of the property which she had inherited from him. It is true that the Foy case used the words fee simple, but Article 1291 makes the use of such words unnecessary in Texas.

The case In re Gardner, 140 N.Y. 122, 35 N.E. 439, 440, by the highest Court of the State of New York, is also in point. We quote: " * * * But what was the contingency upon which such a change in the quality of the estate devised was to depend? * * * The will took effect at the very moment of death, and there was not, therefore, any part of the property which was not disposed of 'at her decease.' * * * He anticipated the contingency that she might die intestate, and as to that portion of his estate which might then remain he provided that it should go to the issue of his own blood, and not to her heirs or next of kin. This contingency never happened, and hence the title in fee which she took was never divested or determined, but passed in accordance with the provisions of her will."

Appellants rely strongly upon the cases of Weir v. Smith, 62 Tex. 1; Arnold v. Southern Pine Lumber Co., 58 Tex.Civ. App. 186, 123 S.W. 1162; Caples v. Ward, 107 Tex. 341, 179 S.W. 856.

These cases are distinguishable. In the Weir-Smith case there was strong language indicating that only a life estate was granted the wife and she could only dispose of the property in the event she could induce her co-executor to join her in such a conveyance. In the case at bar there is no suggestion of a life estate in "Article Second" and Mrs. Wilson was not required to secure the joinder of anyone to make disposition of the property. Her power to dispose of the property inter vivos was untrammeled and unlimited.

In the Arnold case Mrs. Wallace was expressly given a life estate, with the qualified power to sell the property and reinvest the proceeds in other property to be held by her, while in the case at bar there was no limiting of the estate to a life estate and Mrs. Wilson could do as she pleased with the proceeds of any sale.

In the Caples-Ward case the grant was to the wife for the term of her natural life with the remainder to the husband's five children. The wife, with the consent of a majority of the children, had power to sell, etc. Here Mrs. Wilson was not required to secure the joinder of anyone. This case was distinguished by Justice Brown of the Fort Worth Court of Civil Appeals, in First National Bank v. Mabry, 126 S.W.2d 59.

■ We construe the will of Edward Allen Wilson as giving to his wife a conditional fee in all of his property. We think this is clearly shown by the will itself, and it is further compelled by the rule that the first taker must be given the greatest possible estate consistent with a fair construction of the will. Rae v. Baker, Tex.Civ.App., 38 S.W.2d 366; Darragh v. Barmore, Tex.Com.App., 242 S.W. 714; Thompson v. Schryver, Tex.Civ.App., 159 S.W.2d 955.

■ We now come to the question as to whether Mrs. Wilson in her will intended to dispose of only her one-half of the community estate of herself and her deceased husband, or whether she intended to make testamentary disposition of the entire community estate. If we be correct in our first holding, that Mrs. Wilson inherited a conditional fee (which became a fee estate) from her husband, and not merely a life estate, then there can be no question that she intended to devise the entire estate. But if we be in error in holding that she inherited a conditional fee, she was given the power of appointment by her husband's will and she unquestionably exercised that power.

The community estate of Edward Allen Wilson and his wife was of the value, at

the time of his death, of approximately two million dollars ($2,000,000). It consisted almost entirely of personal property, such as stocks, bonds, money in bank, etc. Mrs. Wilson immediately after her husband's death took possession of the entire estate. She caused all the registered bonds to be transferred from her husband's name to her name individually. Likewise, she had all the stocks transferred of record to her own name. She closed all her husband's bank accounts and opened new ones in different banks in her own name. When bonds matured, when interest was due, and when dividends were declared, she collected the money, and deposited it in her individual bank accounts. She freely sold, traded in, and dealt with all securities as her own. Approximately seventy-five per cent of the securities in her hands at the time of her death had been purchased by her during the twelve years she lived after her husband's death. In view of the fact that Mrs. Wilson had full power to dispose of her husband's estate and was not required to account to anyone for the proceeds thereof, unquestionably this seventy-five per cent of the securities became and were her separate property. McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412; Norton v. Smith, Tex.Civ.App., 227 S.W. 542.

Mrs. Wilson expressly named two lots of land and two automobiles and devised them to certain individuals, thereby showing that she was claiming the entire estate and intending to make testamentary disposition of the same and not merely a one-half community interest therein. Cheatham v. Mann, Tex.Civ.App., 133 S.W.2d 264, writ refused; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Rogers v. Trevathan, 67 Tex. 406, 3 S.W. 569; Farmer v. Zinn, Tex.Com.App., 276 S.W. 191.

Another circumstance which has a bearing on Mrs. Wilson's intention is the fact that she went, soon after her husband's death, and executed a will showing an intention to meet the requirements of his will to the effect that she must leave a will executed after the date of his death.

It is true that the sums of money bequeathed by her will were probably little more than half the value of the estate in 1933. However, the country at that time was suffering from a great depression, and especially from a crash in the stock market of which the Wilson estate owned many. At the time Mrs. Wilson executed her last will, in 1933, it is shown that she had a list of certain stocks and bonds, the indicated value of which was just slightly more than the sum total of all the bequests made by her. The trial judge was the trier of facts and it was for him to give such weight to this circumstance as he thought proper. By her will she left the residue of her estate to her husband's relatives and Yale University, his alma mater. The specific bequests given amounted to $520,000, but she took care of the fluctuating value of the estate as follows:

"If the residue and remainder of my estate shall be greater than Five hundred and twenty thousand ($520,000.00) Dollars, the total of the bequests set out in this Article Third of my will, said bequests shall be increased proportionately out of such surplus; but if said residue and remainder of my estate be less than said sum of five hundred and twenty thousand ($520,000.00) Dollars, the total of the bequests set out in this Article Third of my will, then said bequests shall be decreased proportionately."

This gave her will elasticity and regardless of how values might fluctuate she would not be required to change her will.

It is also true that Mrs. Wilson used the term "my estate" in her will, but the trier of facts could very easily have concluded that Mrs. Wilson believed that she had inherited her husband's half of the estate, and when she said "my estate" she referred to the entire estate, which had been at one time one-half her husband's. If she was mistaken in presuming she had inherited her husband's estate it is of no consequence here if she actually believed she had inherited it and intended to dispose of the entire estate by her will. The controlling factor is, What did she intend? Under all the facts and surrounding circumstances, the trial court did not err in finding as a fact that Mrs. Wilson, by her will of June 20, 1933, intended to and did dispose of, as an entity and entirety and as one estate, all the property in her hands at the time of her death, including what during the life of her husband had been his community one-half interest.

We find no error in the judgment and it is accordingly affirmed.