## MITCHELL et al. v. EDDS et al.
### No. 11390.

Court of Civil Appeals of Texas.
San Antonio.
May 3, 1944.

O. F. Burney, of Floresville, for appellants.

DeWitt Murray, of Floresville, and Mann & Mann, of Laredo, for appellees.

SMITH, Chief Justice.

O. D. Rhode of Wilson County died in 1915 survived by his wife, Julia E. Rhode, who was appointed, qualified and acted as independent executrix of his estate until her death in 1942. She left a will in which she devised her entire estate to G. H. Edds, and appointed him independent executor of her estate. Edds qualified and is still acting as such executor. Also, at the death of Julia E. Rhode, W. H. Mitchell was appointed and qualified and is acting as administrator de bonis non, with will annexed, of the estate of said O. D. Rhode.

A controversy arose among claimants of the estate, and Mitchell, as administrator, brought this action for the purpose of getting a judicial construction of the O. D. Rhode will in line with Mitchell's contentions, which had been questioned by other claimants. Upon a trial to the court upon an agreed stipulation of facts the trial court ruled against Mitchell's contentions and he has appealed.

The estate of O. D. Rhode consisted only of his half interest in real and personal property owned in community by his wife,

Julia E. Rhode, and himself. Besides provisions, including a life annuity in favor of Minerva Hightower, a negro servant, and other provisions not pertinent to this inquiry, O. D. Rhode's will contained the following provisions:

"Item 3. I will, devise and bequeath to my wife, Julia E. Rhode, all the property, real, personal and mixed, of whatsoever kind and character and wheresoever located or situated, of which I may die seized and possessed, for and during her natural life, with remainder as hereinafter provided.

"Item 4. I hereby appoint my wife, Julia E. Rhode, as independent executrix of this my last will and testament with full power and authority in her to bargain, sell, convey, mortgage, or otherwise dispose of or encumber, all or any part of my property, real, personal and mixed, for any reason, or purpose she may desire in the same manner and as fully and completely as I could do if living, and to use the proceeds of such sale, mortgage, or other encumbrance as she may see fit and deem proper, and if she uses or disposes of all or any part of my property, or the proceeds thereof, she shall in no event be required to account to any one therefor. * * *

"Item 6. If, after the death of my wife, Julia E. Rhode, and the death of said Minerva Hightower, any portion of my estate remains, then the same shall descend and pass to my heirs according to the laws of descent and distribution of the State of Texas, and may after the death of both my said wife and said Minerva Hightower, and not until then, be partitioned among those so entitled to receive the same under said laws of descent and distribution. * * *

"Item 8. In the event of the death, inability or failure of my wife to act as executrix of this my last will, I nominate and appoint as a substitute W. H. Edds independent executor of this my last will and testament, and give to him the same power and authority in all respects as are herein and hereby given my said wife as executrix, in the same manner and as fully and completely as if the power and authority were here enumerated again."

After her husband's death, his widow, Julia E. Rhode, had his will probated and she qualified as independent executrix and acted as such until her death. W. H. Edds, named in O. D. Rhode's will as substitute or alternative executor, died before Julia E. Rhode and therefore never qualified or acted in that capacity.

At her death Julia Rhode left a will in which she devised her estate to her nephew, G. H. Edds, except a special bequest of a life annuity of $50 per month to Minerva Hightower, to be paid out of her estate by her executor. It is not possible to determine from her will whether Julia E. Rhode intended that it should operate upon the whole of the community estate of O. D. Rhode and herself remaining on hand at her death, or upon only one-half of the community estate. Upon conclusions hereinafter stated, however, we hold, as a matter of law under the stipulated facts, that her will operated upon only one-half of the community estate.

In her will Julia E. Rhode appointed the said G. H. Edds as independent executor of her estate. Her will was duly probated, and Edds qualified as independent executor thereunder. W. H. Mitchell was appointed and qualified as administrator de bonis non, with the will of O. D. Rhode annexed, of the estate of O. D. Rhode. As stated, Mitchell brought this suit as administrator de bonis non to ascertain, in effect, whether the heirs at law of O. D. Rhode shall, under the latter's will, take one-half of the community estate possessed by Julia E. Rhode at her death, or whether G. H. Edds, as sole devisee of Julia E. Rhode, shall take all of said estate.

It is agreed by the parties that prior to her death Julia E. Rhode, the widow, sold all the community real estate, except the homestead, and used some of the proceeds therefrom for her own maintenance but invested all the remainder in stocks and bonds, and loans for which she took promissory notes. All those securities remained intact in her possession up to the time of her death. It was agreed that all of them were purchased with proceeds from sales of the community real estate. It was also agreed that G. H Edds is the owner of one-half of those securities under the will of Julia E. Rhode, and the question for decision here, as it was in the trial court, is that of whether G. H. Edds is entitled to the remaining half under the will of Julia E. Rhode, or should it go to the heirs of O. D. Rhode under his will. It is not actually a case of tracing, as the specific property in dispute is the identical property purchased solely with proceeds from sales of community real estate. In other words, Julia E. Rhode, individually and as independent executrix of the estate of O. D. Rhode, exercised the power conferred upon

her in the will of her husband, O. D. Rhode, by selling part of the community estate of the two and investing the proceeds of such sales in the very property involved here. She simply changed the form of the community assets by converting the real estate into personal property.

Appellees' case rests solely upon their contention that by selling and conveying the real property the life-tenant thereby divested the remaindermen of all interest in the estate devised to them in the will of O. D. Rhode. Appellants' contention is, on the contrary, that since the proceeds of the sale of that real property were immediately invested in securities which were retained intact by the life tenant and were in her possession at her death, a one-half interest in the title thereto should pass to them as remaindermen under the will of O. D. Rhode.

Generally, it may be said that the cases relied upon by appellees, with one exception, are those in which the devise was in fee as distinguished from a life estate, coupled with power of sale in the life tenant. The exception is the case of Hanna v. Ladewig, 73 Tex. 37, 11 S.W. 133, upon which appellees chiefly rely. In that case the remaindermen sought unsuccessfully to follow and recover real property which the life tenant had conveyed away under absolute power to dispose of it either by deed *or will*. The case is not in point here upon the facts, and, besides, did not involve any question concerning title to proceeds from sale of realty belonging to the estate. It is true some of the language used in the opinion in that case was in line with appellees' contentions, but being inapplicable to the case made here, is of no value in the decision of this case.

Of course, where the devise is in fee contingent remaindermen are cut off by conveyance and can assert no claim to the proceeds of sales or assets purchased with such proceeds, for the obvious reason that the devisee is vested with title in fee, as distinguished from a mere life tenancy. Norton v. Smith, Tex.Civ.App., 227 S.W. 542.

■ It seems it is for a very good reason that the power of a life tenant is restricted by a devise whereby remaindermen take that part of the corpus of the estate left by the testator. Where the life tenant with power of sale conveys to others a specific part of the corpus of the testator's estate, such conveyance has the effect,

of course, of divesting the remaindermen of title to the conveyed interest.

But where the life tenant in such event preserves the proceeds from such sales and converts it into specific and tangible assets and retains it in that form until his death, it seems that the title in remaindermen to such assets ripens upon the happening of the prescribed contingency (which in this case is the death of Minerva Hightower) when such assets as then remain on hand should be distributed to them. To hold otherwise would be to say that the power of disposal by sale or encumbrance given the life tenant has the effect of enlarging the life estate into an estate in fee, in contravention of the settled law in this State. 17 R.C.L. p. 624, § 13; 28 Tex.Jur. p. 53, § 2; Weir v. Smith, 62 Tex. 1; Caples v. Ward, 107 Tex. 341, 179 S.W. 856; Cragin v. Frost Nat. Bank, Tex.Civ. App., 164 S.W.2d 24.

■ We think these distinctions are important and controlling in this case and we should look to the language of O. D. Rhode's will for their application. In his will his wife, Julia, was given the power as executrix to sell or encumber all or any part of the property in which she was given a life estate, "for any reason or purpose she may desire," or to "use the proceeds" of such sales or encumbrances "as she may see fit and deem proper, and if she uses or disposes of all or any part of" such property, *"or the proceeds thereof,* she shall in no event be required to account to anyone therefor." It was then provided in said will that if after the death of Julia E. Rhode and Minerva Hightower any portion of the testator's estate remains, the same shall go to the heirs at law of the testator, and be partitioned among them. This language and those provisions of the will seem to clearly imply an intention of the testator that the corpus of his estate and the proceeds from sales therefrom were to be treated indiscriminately as assets of his estate, and the terms "sales" and "proceeds" should be considered alternatively, and distributed without distinction as to the form of those assets. The life tenant as executrix was given the absolute power to sell and the absolute right to use the proceeds from sales; and if she sold any of the estate, *or* used any of the proceeds of sales, she should not be required to account for the *parts sold,* or the *proceeds used.* But the clearly implied intention of the testator was that the un-

sold portions of the estate, if any, or the proceeds therefrom, if any not consumed by the life tenant, should go to the testator's heirs at law. The law will not write into the will such a strained or unnatural construction as would enable the life tenant to cut off the remaindermen by the device of changing the form of the assets of the estate, and retaining and diverting those assets at her death to others not contemplated by the testator. The life tenant was not given the power to dispose of the estate *by will,* as in Hanna v. Ladewig.

It seems obvious from the terms and language of O. D. Rhode's will that he intended to give his widow the free use of his estate and all its proceeds and revenues so long as she lived, and without reservation, but that his heirs at law should take whatever remained of his estate, in whatever form preserved, after the death of Julia E. Rhode and Minerva Hightower. We are of the opinion that his intention, so clearly implied, is best served by holding that even though the widow converted some of his real property into forms of securities which she retained intact and in her possession to the day of her death, what remained of them should go to his heirs at law at the time prescribed in the will. Cragin v. Frost Nat. Bank, Tex.Civ.App., 164 S.W.2d 24.

■ Keeping in mind the Texas Rule that a mere life estate may not be enlarged into a fee simple by an accompanying power of disposal, we are of the opinion that the rule laid down by Mr. Page in his excellent work on Wills is applicable, as follows:

"A remainder over after a life estate in property over which the life tenant has a power of absolute disposition, is valid as to the property not disposed of, in jurisdictions where such a power does not enlarge the life estate into a fee, whether the power of disposition is implied from a gift over of whatever is not disposed of at the death of the life tenant, or whether it is given by express words. Such a remainder is, of course, ended as to the property transferred by virtue of the power of disposition; *but the proceeds of such sale, no matter how changed in form,* pass to the remaindermen if undisposed of." 2 Page on Wills, 2d Ed., § 990.

See also Weir v. Smith, 62 Tex. 1; Olson v. Weber, 194 Iowa 512, 187 N.W. 465, 27 A.L.R. 1370; Annotation, 2 A.L.R. 1243.

■ Among the securities listed as in dispute were five United States Savings Bonds, to mature in 1951, purchased by Julia E. Rhode (out of the proceeds from sales) and made payable at the latter's death to her relative, Retta B. Edds. It was stipulated by the parties that Retta B. Edds owned a one-half interest in those bonds, and that the only question to be decided by the trial court was that of whether the said Retta B. Edds, on the one hand, or the heirs of O. D. Rhode, on the other, were entitled to the remaining one-half interest in said bonds, under Item 6 of the will of O. D. Rhode.

The nature of the bond transaction lifted it out of the category in which all the other transactions involved rested, for the bond transaction was one resting in contract, rather than upon a gift or devise. The status of the title to those bonds was fixed by the contract between Julia Rhode and the United States Government, whereby the former purchased the bonds from the latter and paid for them under an agreement that the Government would pay the amount of the bonds to Retta B. Edds at their maturity at or after the death of Julia E. Rhode. The death of the latter automatically fixed the relation of creditor and debtor between Retta B. Edds and the Government, whose obligation to her ripened, not by devise, but by the happening of the event which fixed the liability of the Government to Retta B. Edds, the payee, in accordance with the contractual obligation of the Government to pay her the amount of the bonds at maturity and upon the death of Julia E. Rhode. The facts of the transaction were stipulated by all the parties, and under those facts Retta B. Edds became the owner of full title to the bonds. United States v. Dauphin Deposit Trust Co., D.C.Pa., 50 F.Supp. 73; In re Deyo's Estate, 180 Misc. 32, 42 N.Y.S.2d 379; Franklin Washington Trust Company v. Beltram, 133 N.J.Eq. 11, 29 A. 2d 854.

The trial court concluded as a matter of law, under the facts of the case as applied to the will of O. D. Rhode, that the sale of the community real property by Julia E. Rhode absolutely divested the estate of O. D. Rhode (and the remaindermen designated in his will) of all interest in said community estate, including the cash in bank and the identified specific properties purchased with the proceeds of such sale and on hand at the death of Julia Rhode, and

that same should go under her will to her sole devisee, G. H. Edds. We overrule that conclusion and under the holdings expressed in the foregoing opinion the judgment of the trial court will be affirmed as between appellants and Retta B. Edds, but as between appellants and appellees other than Retta B. Edds the judgment will be reversed and judgment here rendered that under the will of O. D. Rhode and the facts stipulated below, one-half of the cash on hand in bank at the death of Julia E. Rhode, one-half of the community homestead and the household furniture therein (purchased with proceeds from such sale), and one-half of the securities mentioned other than the United States Savings Bonds payable to Retta B. Edds, constitute a part of the estate of O. D. Rhode, deceased, to be administered in keeping with the provisions of his will.

Affirmed in part; in part reversed and rendered.