Estate of Anthony F. Snyder, deceased. Appeal of Charles J. Snyder, Catharine F. Feil, wife of William Feil, and Elizabeth R. Miller.

*Will—Intestacy—Vested and contingent interests.*

Testator gave the residue of his estate to his executors in trust, at the death of his wife, to pay the income to his four children, Edmund, Charles, Catharine and Elizabeth, in equal shares for their lives, respectively, providing as to the principal as follows, " and upon the death of my above-named children and as the same shall occur then in trust to pay over, grant and convey unto the respective children of my above-named sons and daughters the ·principal or share of my estate, the income of which is devised for the benefit of their respective parents for life, in such manner as if such deceased sons and daughters had died seized thereof intestate." After the death of testator's widow, the only child of Edmund, who was living at the death of the testator, died in his minority, unmarried and without issue, in the lifetime of his father and mother. Edmund subsequently died without leaving any child to survive him, and by his will giving his whole estate to his wife. *Held*, (1) that the interest of Edmund's child was vested, and passed at the child's death under the intestate laws to his father and mother; (2) that Edmund's widow was entitled to the share of the child passing to Edmund.

Argued Jan. 12, 1897. Appeal, No. 472, Jan. T., 1896, by Charles J. Snyder et al., from decree of O. C. Phila. Co., sustaining exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication of account of surviving executor.

The facts appear by the opinion of PENROSE, J., which was as follows:

The testator gave the residue of his estate to his executors in trust, at the death of his wife, to pay the income to his four children, Edmund, Charles, Catharine and Elizabeth, in equal shares, for their lives, respectively, providing as to the principal as follows, "and upon the death of my above-named children, and as the same shall occur, then in trust to pay over, grant and convey unto the respective children of my above-named sons and daughters the principal or share of my estate, the income of which is devised for the benefit of their respective

parents for life, in such manner as if such deceased sons and daughters had died seized thereof intestate."

The wife died in 1890; Leon Snyder, the only child of Edmund, who was living at the death of the testator, his grandfather, died in his minority, unmarried and without issue, in 1892, in the lifetime of his father and mother; and Edmund died in September, 1895, leaving a will by which he gave his entire residuary estate, real and personal, to his wife, Mrs. Francis L. Snyder, the mother of Leon, and appointed her his executrix.

The question presented by the exceptions is whether Leon Snyder had a vested interest in the fourth of the testator's residuary estate held in trust for his father Edmund, for life, which passed at his death, though the particular estate had not then terminated, to his father and mother under the intestate laws; if he had not, then as he was Edmund's only child, and the will contains no limitation over in default of persons capable of taking in remainder, there was, as the auditing judge had held an intestacy as to this share, relating back to the testator's death, and increasing correspondingly, the shares given by the will to the widow and children.

It is said that while the will contains no words of express condition, and while it does not say that the grandchildren to whom the interests in remainder are given shall be living at the death of their parent, this result is a necessary inference from the provision for conveyance to them "in such manner as if such deceased parent had died seized thereof intestate," for how, it is argued, could a conveyance be made to persons not living, or a child dying in the lifetime of his parent take any part of his estate under the intestate laws?

But in searching for a meaning of words in a will we are not to adhere too closely to literal signification or lose sight of fundamental principles. The law leans in favor of vested rather than contingent interests, and resolves doubts in favor of vesting. The postponement of a gift until the expiration of a prior estate does not imply a condition that the legatee shall survive the first taker, or that his interest shall not vest in the meantime with a mere deferring of the right of possession; estates will be held to vest, subject to opening in order to let in others of the requisite class, as soon as there is one in being who can

take; and once vested they will not be divested or defeated by any doubtful implication of condition—conditions which defeat estates being looked upon with disfavor; when the meaning is not clear a construction as nearly conformed to the general rules of inheritance as possible will be adopted, and finally a construction which leads to an intestacy will never be adopted if, without perversion of the words of the will, it can be avoided.

The question here is not affected by the direction for conveyance at the expiration of the life estate. In England this would simply continue the legal estate in the trustees until the conveyance was made; here, where equity is part of the common law, it has not even this effect, and the legal estate vests at once in the beneficiary: Renziehausen v. Keyser, 48 Pa. 351; Bacon's Appeal, 57 Pa. 504. We need, therefore, only consider whether the apparently absolute gift to the grandchildren is made contingent upon survivorship because the conveyance is to be made to them " in such manner as if the parent had died seized thereof intestate." It may be conceded that these words can be understood as expressing, obscurely and in an unusual manner, the idea that the child must be alive at the parent's death, though it could have been expressed much more easily by the familiar formula " to such child or children of my said sons or daughters as may be living at the time of their respective deaths;" but their natural meaning is that the children shall take in the proportions to which the intestate laws give them the estate of their parents; or they may have been intended to define the estate or quantity of interest, viz: an absolute interest, such as the intestate laws so give, and the testator, it will be observed, has used no other words of limitation. Understood in either of the senses last suggested, an intestacy, in an event obviously likely to have suggested itself to the mind of the testator, and which has actually occurred, is avoided, and no rule of construction or principle of law is strained or violated: understood in the sense which prevents vesting, grandchildren of the first takers—children of children dying during the continuance of the prior estate—could have no share of the estate, since gifts to children do not include grandchildren: Hallowell v. Phipps, 2 Wharton, 376; Horwitz v. Norris, 49 Pa. 213, and hence there would have been an intestacy even if Leon Snyder had left children now living.

We cannot, under the principles referred to, avoid the conclusion that the interest of Leon Snyder was vested, and that at his death it passed under the intestate laws, subject to the proviso as to blood of the first purchaser, to his father and mother, the share of the father being now vested in the mother as his sole legatee and devisee.

It may be added that even if there had been an intestacy as to the fourth of the real estate, as Edmund would himself be entitled as one of the heirs: Deginther's Appeal, 83 Pa. 337; Bell's Appeal, 147 Pa. 389, although he was also. tenant for life, his interest in fee, with its income, would pass under his will to his devisee, and thus entitle her to share in the distribution of the balance shown by the trustees' account.

The exceptions are sustained and the distribution awarded by the adjudication corrected accordingly. Counsel will prepare the necessary decree.

*Errors assigned* were in sustaining exceptions to adjudication.

*Chas F. Stilz*, for appellants.—The act of May 6, 1844, does not extend to a bequest to a class: Gross's Est., 10 Pa. 360.

The time of distribution defines those who are to take. This being not at the date of the will, nor at the death of the testator, but at the death of the life tenant.

From the terms of the will it appears that the testator's children and grandchildren were the objects of his care and bounty, and only those can take who are in the designated class: Guenther's App., 4 W. N. C. 41; Huss v. Stephens, 51 Pa. 282; Mergenthaler's App., 15 W. N. C. 441.

*Samuel Wakeling*, for appellee, cited: Lantz v. Trusler, 37 Pa. 482; Young v. Stoner, 37 Pa. 105; Chew's App., 37 Pa. 23; Minnig v. Batdorff, 5 Pa. 503; Williams's App., 4 W. N. C. 189; Yarnall's App., 70 Pa. 335; Womrath v. McCormick, 51 Pa. 504; Muhlenberg's App., 103 Pa. 587; Richardson's App., 19 W. N. C. 175; Fairfax's App., 103 Pa. 166; McBride v. Smyth, 34 Pa. 245; Barclay v. Lewis, 67 Pa. 316; Anthracite Savings Bank, Trustee, v. Lees, 176 Pa. 402; Gross's App., 10 Pa. 360; Huss v. Stephens, 51 Pa. 282.

PER CURIAM, January 25, 1897:

This appeal is from the decree distributing balance in hands of Charles J. Snyder, surviving executor of Anthony F. Snyder, deceased. The controlling question was whether Leon Snyder had a vested interest in the fourth of testator's residuary estate held in trust for his father, Edmund Snyder, for life, etc. The learned court was clearly right in holding that he had, and in distributing the fund accordingly.

It is unnecessary to. consider the specifications of error at length. The questions involved are so fully and satisfactorily discussed in the clear and convincing opinion of the court, sustaining exceptions to the adjudication of the auditing judge, that we are quite content to affirm the decree on that opinion.

Decree affirmed and appeal dismissed at appellants' costs.

