G. H. EDDS V. W. H. MITCHELL, ADMINISTRATOR ET AL.

No. A-269. Decided January 17, 1945.
(184 S. W., 2d Series, 823.)

*DeWitt Murray,* of Floresville, and *Mann & Mann,* of Laredo, for petitioner, G. H. Edds.

The Court of Civil Appeals erred in holding that the exercise by Julia E. Rhode of the power of sale conferred on her by the terms of the will of O. D. Rhode did not operate to divest all title out of the heirs of O. D. Rhode in and to the proceeds of such sale. McMurry v. Stanley, 69 Texas 227, 6 S. W. 412; Norton v. Smith, 227 S. W. 542; Wykes v. Wykes, 174 S. W. (2d) 333; McNabb v. Cruze, 132 Texas 476, 125 S. W. (2d) 288.

*O. F. Burney,* of Floresville, for respondent Mitchell.

The holding of the Court of Civil Appeals was correct. Caples v. Ward, 107 Texas 341, 179 S. W. 856; Weir v. Smith, 62 Texas 1; McCormick v. McCormick, (Ky.) 121 S. W. 450; 28 Tex. Jur. 53; 17 R. C. L. 624.

MR. JUDGE SMEDLEY, of the Commission of Appeals, delivered the opinion for the Court.

The decision of the principal question in this case depends upon the construction of the will of O. D. Rhode, who died in the year 1915. The community estate of Rhode and his wife, Julia E. Rhode, consisted of a homestead and certain other real property and two promissory notes. His will made disposition of his undivided one-half interest in the community property, the relevant parts of the will being as follows:

"Item 3. I will, devise and bequeath to my wife, Julia E. Rhode, all the property, real, personal and mixed, of whatsoever kind and character and wheresoever located or situated, of which I may die seized and possessed, for and during her natural life, with remainder as hereinafter provided.

"Item 4. I hereby appoint my wife, Julia E. Rhode, as independent executrix of this my last will and testament with full power and authority in her to bargain, sell, convey, mortgage, or otherwise dispose of or encumber, all or any part of my property, real, personal and mixed, for any reason, or purpose she may desire in the same manner and as fully and completely as I could do if living, and to use the proceeds of such sale, mortgage, or other encumbrance as she may see fit and deem proper, and if she uses or disposes of all or any part of my property, or the process thereof, she shall in no event be required to account to any one therefor.

"\* \* \* \* \* \* \*

"Item 6. If, after the death of my wife, Julia E. Rhode, and the death of said Minerva Hightower, any portion of my estate remains, then the same shall descend and pass to my heirs according to the laws of descent and distribution of the State of Texas, and may after the death of both my said wife, and said Minerva Hightower and not until then be partitioned among those so entitled to receive the same under said laws of descent and distribution."

Minerva Hightower, referred to in Item Six, was a servant, for who the substitute executor, after the death of the testator's wife, was directed by Item Five of the will to build a small dwelling on land belonging to the estate and to whom he was directed to make a monthly payment of $25.00 "out of any property or money of my estate remaining after the death of my wife."

The two notes belonging to the estate were collected by the surviving wife, Julie E. Rhode, and the proceeds were consumed by her during her lifetime. Mrs. Rhode did not dispose of the homestead except a small part of the same that was sold to satisfy the bequest made to Minerva Hightower. When Mrs. Rhode died in the year 1941, there were in her possession the homestead and certain personal property consisting of cash, promissory notes, certificates of stock, government bonds, and household furniture. All of this personal property represented proceeds derived from the sale by Mrs. Rhode of the real property (except the homestead) belonging to the community estate.

Mrs. Rhode left a will by which she devised all of her property to the petitioner herein, G. H. Edds, who was her nephew. There is no controversy as to the homestead, the subject matter of the suit being an undivided one-half interest in the personal property in Mrs. Rhode's possession at the time of her death. The issue in the case is thus stated in the stipulation of facts made by the parties:

"The title to the remaining undivided 1/2 interest in such personal property is either owned (subject to the rights of Minerva Hightower under the will of Julia E. Rhode or O. D. Rhode, as the case may be) by George Henry Edds or by the heirs of O. D. Rhode, deceased, within the meaning of Item 6 of the last will of O. D. Rhode, depending on whether, under the terms and provisions of the last will of O. D. Rhode, deceased, when properly constructed, Julia E. Rhode became the sole owner of all the proceeds derived from the sale of such community real estate so that the same passed to George Henry Edds under Julia E. Rhode's last will, or whether 1/2 of such proceeds is now owned by the heirs of O. D. Rhode, deceased, under Item 6 of the will of O. D. Rhode; the question set out in this sentence being the controlling issue in this suit."

The trial court adopted as its findings of fact the stipulation made by the parties, from which the facts stated herein are taken, and rendered judgment for petitioner, G. H. Edds, concluding that the sale, made by Mrs. Rhode during her liftime,

of the real property belonging to the state extinguished all right, title and interest that the remaindermen, the heirs of O. D. Rhode, had in the said property, and that they were not entitled to follow the proceeds from the sale and had no right, title or interest therein.

The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for respondent Mitchell, holding that the proceeds of the sale of the real estate, that is one-half of them, constituted a part of the estate of O. D. Rhode, and passed, subject to administration, to his heirs as remaindermen under his will. 181 S. W. (2d) 323.

■ The intention of the testator, clearly expressed by Item Three of the will, that his wife should take only a life estate, is a fact of importance in determining the question presented for decision, which, as petitioner in his application for writ of error states, is whether the exercise by the life tenant of the power of sale giving by item 4 of the will operated to divest the remaindermen of title to the proceeds of the sale. Important also is the rule established by the decisions in this state and in the great majority of the other states that the added full power of disposition given to the life tenant, like that given in Item Four of the will, does not raise the life estate to a fee. Weir v. Smith, 62 Texas 1, 9; Caples v. Ward, 107 Texas 341, 345-346, 179 S. W. 856; Note 36 A. L. R. pp. 1177, 1180-12-18; Note 76 A. L. R. pp. 1153, 1154-1166; 33 Am. Jur. pp. 484-485, Sec. 21; 3 Page on Wills (3rd ed.) pp. 375-378, Sec. 1117. The power of disposition is not an estate. It is merely authority derived from the will to dispose of the fee. Gildersleeve v. Lee, 100 Ore. 578, 198 Pac. 246, 36 A. L. R. 1166, 1169. It is not inconsistent with or repugnant to the estate for life. 33 Am. Jur. pp. 484-485, Sec. 21. It is not repugnant to the remainder, but when exercised, it defeats the remainder in the property sold or conveyed. Caples v. Ward, 107 Texas 341, 346, 179 S. W. 856. As said in Grace v. Perry, 197 Mo. 550, 562, 95 S. W. 875, 878, 7 A. & E. Ann. Cas., 948, 951:

"It must be remembered that the devise is express for life with power to dispose of the fee, and it is a well-settled principle of law that a power or disposition added to the life estate is not repugnant to the life estate or to the remainder over. If not exercised it leaves both estates unaffected by it. If exercised, it defeats the remainder in the property disposed of; the remainder being subject to such defeat, as in this case."

■ A power that is not an estate but is merely authority to dispose of the fee, that is repugnant neither to the life estate nor

to the remainder, and that does not in the addition of it to the life estate raise that estate to a fee, should not, in the mere exercising of it, enlarge the life tenant's estate. But that effect would be given to it, if it were held that the exercise of the power by the life tenant operated to divest the remaindermen of all title or right to the proceeds of the sale.

For the foregoing reasons and others to be stated, and after examining many authorities, we reach the conclusion that when a life estate is expressly created by will and unlimited power of disposition given to the life tenant, with remainder over in whatever part of the estate remains undisposed of at the time of the death of the life tenant, the proceeds of sale made by the life tenant, undisposed of at the time of his death, as well as the unsold part of the very property devised, pass to the remainderman, provided of course, the language of the will does not disclose an intention that the proceeds of sales shall not so pass.

By this construction of a will containing such provisions, full effect is given to the testator's intention. The testator intends that the first taker shall have only a life estate in the property constituting his, the testator's estate, but that the life tenant shall have unlimited power to dispose of the fee; and he intends that so much of the property of his, the testator's, estate as has not been disposed of at the time of the life tenant's death shall pass to the person named in the will as remainderman. Practically considered, the proceeds of sales made by the life tenant are a part of what passed under the will, taking the place in changed form of the property sold, and if they remain in the life tenant's possession until the time of his death they would pass to the remainderman as the property itself would have passed had it not been sold. If it were held that the exercise of the power of sale by the life tenant operated to divest the remainderman of all title or right to the proceeds of the sale, then the life tenant, merely by selling the property in which he has a life estate, thus changing the form of what came from the testator, could in effect enlarge his estate into a fee, cut off the remainderman, and defeat the testator's intention.

These conclusions are supported by many authorities and we have found none to the contrary. Olson v. Weber, 194 Iowa 512, 187 N. W. 465, 27 A. L. R. 1370; McCormick v. McCormick (Ky.) 121 S. W. 450; Struck v. Lilly 219 Ky. 604, 293 S. W. 153; Henninger v Henninger, 202 Pa. 207, 51 Atl. 749; Walker v.

Pritchard, 121 Ill. 221, 12 N. E. 336; Keniston v. Mayhew, 169 Mass. 166, 47 N. E. 612; Redman v. Barger, 118 Mo. 568, 24 S., W. 177; Smith v. Cain, 187 Ala. 174, 65 So. 367; Note 7 A. & E. Ann. Cas. pp. 953, 956; 3 Page on Wills, pp. 384-385, Sec. 1122.

Petitioner insists that "Irrespective of what the law is in other states, the proceeds of sale in a situation such as we have do not pass to the remaindermen, because of the holdings of this court in the McMurray and Hanna cases and the holdings in other cases which follow such cases."

In McMurray v. Stanley, 69 Texas 227, 6 S. W. 412, the testatrix, Mrs. Bagley, devised all of her property to her husband, N. G. Bagley, adding that he should have full power and control over the same to use and dispose of as he might desire, and in another clause she directed that if at his death he should have "any of said property still remaining in his possession not disposed of or used by him" the same should be given to her nieces. The plaintiffs were the nieces referred to in the will and sought to recover from the executor, devisees and legatees of the husband, N. G. Bagley, certain property that belonged to the estate of Mrs. Bagley at the time of her death and was not disposed of by N. G. Bagley before his death, and also the proceeds remaining in the hands of N. G. Bagley at his death of certain property of his wife's estate that he had sold. The trial court sustaining demurrers to the plaintiff's petition, holding that Mrs. Bagley's will vested in her husband an absolute title in fee, and that it neither gave to the plaintiffs any right to any part of her estate nor affected it with a trust in their favor.

The Supreme Court in its opinion recognized the rule announced by many decisions that when property is devised generally or indefinitely, with full power of disposition, the devise is construed to pass a fee, and an attempted limitation over is void. See Presbyterian Church v. Mize, 181 Ky. 567, 205 S. W. 674, 2 A. L. R. pp. 1237, 1240; 33 Am. Jur. pp. 492-493, Sec. 29, pp. 498-500, Secs. 36-37; 3 Page on Wills, pp. 385, 388, Sec. 1123. The court, however, declined to apply that rule to Mrs. Bagley's will, believing that if it did, the testatrix' intention would be defeated, and held that while N. G. Bagley, the husband, took under Mrs. Bagley's will an estate in fee in the entire property, a trust would attach for the benefit of the nieces and that they were entitled to receive "all such property as belonged to the estate of Mrs. Bagley at the time of her death as was not con-

sumed in its use or disposed of by N. G. Bagley before his death."

The court further held that the nieces were not entitled to proceeds of property that N. G. Bagley had sold, because the letter of the will limited the rights of the nieces to the specific property which constituted the estate of Mrs. Bagley and was devised by her will and which was in the actual or constructive possession of N. G. Bagley and undisposed of by sale or otherwise at the time of his death; and because further there was nothing in the relationship of the parties or the purposes for which the power to use and dispose of the property was given to the husband which would authorize a holding that the testatrix intended that her nieces should have the right to follow and have the proceeds.

From the statement of the contents of Mrs. Bagley's will, construed in the McMurry case, and of the contents of the will of O. D. Rhode to be construed here, two material distinctions are apparent. The first is that under the terms of Mrs. Bagley's will her husband took the entire legal estate in the property, whereas O. D. Rhode's will in this case expressly limited the estate devised to his wife to an estate for life.

As to this first distinction, N. G. Bagley having, under Mrs. Bagley's will, the full legal title to all of the property of her estate, would necessarily have full legal title to the proceeds of sales of that property made by him; and because of the rule that a gift over after a fee is void, a trust for the benefit of the nieces would be imposed upon the specific property that passed under Mrs. Bagley's will, or upon the proceeds of sales of that property, only in the event the will contained very clear evidence of the testatrix' intention that the nieces should have a right to the specific property or to the proceeds. The court, in the McMurry case, found in the will clear evidence of that intention with respect to the specific property, but no evidence of it with respect to the proceeds.

In the instant case O. D. Rhode's will expressly limited the estate given to his wife to a life estate, with provision that if any portion of his estate remained at the death of his wife, it should pass to his heirs. As has been said, the first taker under this will should have no greater estate or interest in the proceeds of sale than he had in the property sold; the proceeds should be regarded as taking the place of the property sold; and any such proceeds that remained unexpended at the death of the life

tenant should go to the remaindermen as if it were the property of which it took the place, unless the will disclosed, as it does not, an intention on the part of the testator that the proceeds should not so pass.

Another distinction between Mrs. Bagley's will and O. D. Rhode's is that the former, while it gave N. G. Bagley full power to dispose of all of the property of the testatrix, made no mention whatever of proceeds of sales and contained nothing indicating an intention on the part of the testatrix that any proceeds of sales should pass to the remaindermen; whereas O. D. Rhode's will contains express references to the proceeds of sales, which, as hereinafter shown, we believe are reasonably construed as evidencing the testator's intention that his heirs shall have proceeds of sales remaining in the hands of the life tenant at the time of her death.

Hanna v. Ladewig, 73 Texas 37, 11 S. W. 133, differs from the instant case in that it was a suit for two certain tracts of land that were devised by the testator and this is a suit for proceeds of sales made by the life tenant, the first taker under the will. In that case Walter Hinkly, the testator, devised all of his property to his wife for her life, with power to sell and convey or will and bequeath the same according to her pleasure. Another paragraph of the will provided that upon the failure of the wife during her life to make a full disposition "of any of my said property" all of the same so undisposed of should descend to four children of his wife. In the year 1865, after the testator's death, the surviving wife conveyed the two tracks of land to Z. N. Hanna, the deed reciting a consideration of $14,000.00, being the satisfaction and cancellation of two notes for that sum theretofore executed by her to Hanna for borrowed money, and the further consideration that Hanna should supply the grantor, who was his mother, with suitable support so long as she should live. The title stood in Z. N. Hanna until sometime in the year 1868, when he reconveyed the land to his mother. The opinion does not show why or for what consideration he conveyed it to her.

The court in its opinion said that "the rights of the plaintiffs (who claimed as remaindermen under Hinkley's will) depend on the fact whether Mrs. Hinkly ever executed the power conferred upon her by the will of her husband" and held that she fully exercised that power when she executed and delivered the deed to Z. N. Hanna; that when the power conferred upon her was exercised, the contingent right of the remaindermen was

forever cut off; and that the fact that the property was recon-veyed to her was a matter of no consequence.

That case holds that when once the power of disposition was exercised by conveyance the right of the remaindermen *in the property conveyed* was forever extinguished. It is not an au-thority on the question in this case, in which the subject mat-ter of the controversy is not the title to the property sold or conveyed under the power, but is the right to the proceeds of the sale.

Petitioner relies also upon three decisions by courts of civil appeals: Feegles v. Slaughter, 182 S. W. 10; Norton v. Smith, 227 S. W. 542; and Young v. Campbell, 175 S. W. 1100.

In Feegles v. Slaughter and Norton v. Smith the wills con-strued were substantially the same as the will construed in McMurry v. Stanley, 69 Texas 227, 6 S. W. 412. Both wills gave title in fee to the first taker and neither of the wills contained any reference to proceeds. Both decisions followed McMurry v. Stanley, and what has been said about the McMurry case is applicable to those decisions.

The will construed in Young v. Campbell, 175 S. W. 1100, was like that in Hanna v. Ladewig, 75 Texas 37, 11 S. W. 133, full power being given to the life tenant to administer, use, en-joy, sell and convey any and all parts of the estate as she saw fit and to use the same as her own during her life. The suit was by the remaindermen to enjoin the life tenant from selling and disposing of the property, allegations being made that she was selling the property and using and spending the proceeds in a reckless and extravagant manner, had sold some of the prop-erty for less than its true value, had wasted the estate, and had made a fraudulent sale of land for the purpose of defeating the rights of the remaindermen. The court, citing the Hanna case, held that the effect of granting the injunction would be to annul and destroy the provision of the will granting to the life tenant the power to administer the estate and dispose of the property as she saw fit, which, as the life tenant was still living, rendered the bringing of the suit premature. It is evident that the de-cision is not authority in this case. We have found no Texas de-cision in conflict with the conclusion we have reached as to the construction of O. D. Rhode's will.

We believe further that the will, at least by clear implica-tion from the language used, shows the intention of the tes-

tator that his heirs shall be entitled to any proceeds of sales made by Mrs. Rhode that remain in her possession at the time of her death. Item Four of the will authorizes Mrs. Rhode to sell, convey, encumber, or otherwise dispose of "all or any part of my property * * * and to use the proceeds of such sale, mortgage or other encumbrance as she may see fit and deem proper" and provides that "if she uses or disposes of all or any part of my property or the proceeds thereof, she shall in no event be required to account to anyone therefor." Item Six provides that if, after the death of Mrs. Rhode "any portion of my estate remains, then the same shall descend and pass to my heirs, etc."

The clear inference from the phrase in Item Four about accounting for proceeds of sales, when read in connection with Item Six, is that if there are proceeds that have not been used and have not been disposed of when the wife dies, they shall be accounted for, that is to say, that they shall pass to his heirs. The language of Items Four and Six above quoted plainly shows that the testator regarded the property and the proceeds of sales of the property passing under his will as his estate or property. He gave his wife authority to sell "my property." He gave express direction in Item Four as to the use of proceeds of sales of his property and in one phrase gave his wife the right to use and dispose of his property or the proceeds thereof without accounting to anyone therefor. Finally, in Item Six, he directed that if at the death of his wife "any portion of my estate remains" it should pass to his heirs; and this direction, read with Item Four, means any portion of his estate, whether property or proceeds of the property. That the testator in his will treated proceeds as part of his estate is evidenced further in Item Five, where provision is made for Minerva Hightower and the substitute executor is directed to make payments to her "out of any of the property or money of my estate remaining after the death of my wife."

For the reasons given and on the authorities discussed and cited, we hold that the Court of Civil Appeals correctly construed O. D. Rhode's will.

■ The other question to be decided is as to the ownership of an undivided one-half interest in five United States Savings Bonds, aggregating at their maturity in 1951 $1,325.00, that were acquired by Mrs. Julia E. Rhode by the use of proceeds from the sale made by her of real estate belonging to the community estate. These bonds were made payable to Julia E. Rhode and on her death to Retta B. Edds. The controversy is between

Mrs. Edds and respondent W. H. Mitchell as administrator of the estate of O. D. Rhode, and affects only a one-half interest in the bonds, it being agreed that in any event the other one-half interest is owned by Mrs. Edds. Both the trial court and the Court of Civil Appeals decided this controversy in Mrs. Edds' favor. 181 S. W. (2d) 323, 326.

The exact question is: Was the transaction by which Mrs. Rhode acquired the bonds, in so far as the right or interest of Mrs. Edds is concerned, a disposition of proceeds authorized by Item Four of O. D. Rhode's will? The Court of Civil Appeals answered this question in the affirmative by its decision that the bond transaction was one resting in contract rather than upon a gift or devise, and that the right or interest of Mrs. Edds was fixed by the contract between Mrs. Rhode and the United States Government and, in accordance with the contractual obligation of the Government, ripened into full title at Mrs. Rhode's death. 181 S. W. (2d) 323, 326.

Respondent Mitchell insists that the transaction was either a gift to take effect at Mrs. Rhode's death or was in the nature of a will; and was invalid as a gift because the bonds were never delivered to Mrs. Edds, and invalid as a will because of non-compliance with statutory requirements.

According to Treasury regulations under which United States Savings Bonds are issued, a bond registered in the name of one person, payable on death to a designated beneficiary, will be paid to the registered owner during his lifetime upon his properly executed request, without regard to the beneficiary; and a bond thus payable may not be reissued during the lifetime of the beneficiary so as to eliminate his name. The regulations further provide that if the registered owner dies without having presented and surrendered the bond for payment, and is survived by the beneficiary, the beneficiary will be recognized by the Treasury Department as the sole and absolute owner of the bond and payment will be made only to him, or the bond may be reissued in his name. Treasury Dept. Circular No: 530 (4th Revision) Sec. 315.12.

There have been several recent decisions as to the nature of the interest of persons named as beneficiaries in United States Savings Bonds and the rights of beneficiaries under these bonds have been the subject of annotations in 131 A. L. R., pp. 967-970, and in all of the last several volumes of those reports: 147, pp. 1466-1469; 148, pp. 1411-1412; 149, p. 1471; 150, p.

1468; 151, p. 1467. Usually the controversy as to ownership has been between the beneficiary designated in the bond and the representative of the estate, or creditors, of the decedent. As shown by the annotations above cited, the weight of authority and the present trend of the decisions sustain the beneficiary's sole and absolute ownership after the registered owner's death.

These decisions are based upon one or both of two grounds. Some cases hold that the Federal statute authorizing the Secretary of the Treasury to issue the bonds, subject to such terms and conditions as he may prescribe, and the Treasury regulations under which they are issued are the valid exercise of the constitutional power "to borrow money on the credit of the United States" and that "no state law can vary the terms of the Federal obligations or derogate from their full enforceability." Franklin Washington Trust Co. v. Beltram, 133 N. J. Eq. 11, 29 Atl. (2d) 854, 856; In re Stanley's Estate, 102 Colo. 422, 80 P. (2d) 332;; In re Deyo's Estate, 180 Misc. 32, 42 N. Y. S. (2d) 379; In re Karlinski's Est. 180 Misc. 44, 43 N. Y. S. (2d) 40; In re Hager's Estate, 181 Misc. 431, 45 N. Y. S. (2d) 468; United States v. Dauphin Deposit Trust Co. (U. S. D. C. Pa.) 50 Fed. Supp. 73; Warren v. United States, 68 Ct. Cl. 634; (certiorari denied 281 U. S. 739, 74 L. Ed. 1154); contra: Decker v. Fower, 199 Wash. 549, 92 P. (2d) 254, 131 A. L. R. 961; Deyo v. Adams, 178 Misc. 859, 36 N. Y. S. (2d) 734.

The other ground upon which the validity of the designation of a contingent beneficiary in the bonds is upheld is that, apart from the asserted supremacy of Federal Law, a valid contract is made by the registered owner and the Government for the benefit, in part, of a third party, the designated beneficiary, who acquires a present vested, though defeasible, interest at the time the contract is made. Franklin Washington Trust Co. v. Beltram, 133 N. J. Eq. 11, 29 A. (2d) 854; Reynolds v. Donko, 134 N. J. Eq. 560, 36 A. (2d) 420; In re Di Santo's Estate, 142 Ohio St. 223, 51 N. E. (2d) 639; In re Deyo's Estate, 180 Misc. 32, 42 N. Y. S. (2d) 379; United States v. Dauphin Deposit Trust Co. (U. S. D. C. Pa.) 50 Fed. Supp. 73.

In this state, as in most of the states, a third person for whose benefit a contract is made, whether he is a creditor beneficiary or a donee beneficiary, has by virtue of the contract a right that he may enforce by suit against the promissor. Splawn v. Chew, 60 Texas 532; Washington Life Ins. Co. v. Berwald, 97 Texas 111, 76 S. W. 442, 1 Am. Cas. 682; Allen v. Traylor (Com. App.) 212 S. W. 945; Contracts for the Benefit of Third Parties in Texas, by Dean Ira P. Hildebrand, 9 Texas

Law Review, pp. 125-171; Williston on Contracts, Vol. 2, pp. 1029-1162; Restatement of the Law of Contracts, Vol. 1, pp. 151-176, Secs. 133-147.

A life insurance policy for the benefit of another is perhaps the best illustration of a contract for the benefit of a donee beneficiary. When the insurance is effected in favor of a third person, his rights under the policy vest immediately, and they can be affected or terminated, without his consent, only in the manner provided by the policy or by the law. If the policy gives the insured the power to change the beneficiary, the right of the beneficiary named in the policy is not indefeasible but it is nevertheless a vested right. Splawn v. Chew, 60 Texas 532; Washington Life Insurance Co. v. Berwald, 97 Texas 111, 76 S. W. 442, 444; Williston on Contracts, Vol. 2, pp. 1079-1080, Sec. 369.

■ The situation of the parties to the United States Savings Bonds is substantially the same as that of the parties to the insurance policy. Mrs. Edds is the third party for whose benefit the contract between Mrs. Rhode and the Government was made, the Government agreeing to pay the bonds to Mrs. Edds on the death of Mrs. Rhode. The latter could not change the beneficiary named in the bonds, but she could defeat the beneficiary's interest by collecting them. Under the rule of the life insurance cases Mrs. Edds' interest, although defeasible, was a vested interest created by the issuance of the bonds. As said in Reynolds v. Danco, 134 N. J. Eq. 560, 36 Atl. 420:

"There was here * * * a contract between the decedent and the government, by the terms of which the defendant, as registered beneficiary, acquired a present vested though defeasible interest contemporaneous with the superior rights of 'the decedent, and his death terminated his rights and left the defendant with an indefeasible ownership entitling him to demand payment of the proceeds."

This classification of the interest of the beneficiary designated in the bonds gives full effect to the terms of the bonds and to the provisions of the Treasury regulations applicable to them.

Since we agree with the conclusion of the Court of Civil Appeals that the right of Mrs. Edds to the bonds rests in a valid contract made for her benefit and not in gift or devise, and that under the contract she became the owner of full title to the

bonds on Mrs. Rhode's death, we express no opinion as to the contention that the beneficiary's ownership should be sustained solely because of supremacy of the Federal statute and Treasury regulations.

The power to dispose of the testator's property and the proceeds thereof is given to Mrs. Rhode by Item Four of O. D. Rhode's will in very broad terms, authorizing her to sell or otherwise dispose of the same for any reason or purpose as she may desire and as fully and completely as the testator could do if living. Her use of the proceeds in procuring the issuance of the bonds payable on her death to Mrs. Edds was in our opinion a valid exercise of authority given by the will. The proceeds were paid to the Government for its contract to pay the bonds to Mrs. Edds at Mrs. Rhode's death, and the issuance of the bonds was a transaction completed during Mrs. Rhode's lifetime for Mrs. Edds' benefit, vesting in Mrs. Edds a present, though defeasible, interest.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court January 17, 1945.