Bill H. SATTERWHITE et al., Appellants,

v.

COMMERCIAL BANK, UNINCORPORATED OF MASON, Texas et al., Appellees.

No. 11393.

Court of Civil Appeals of Texas.

Austin.

April 27, 1966.

Rehearing Denied May 18, 1966.

Morriss, Boatwright, Lewis & Davis, Will A. Morriss, Jr., San Antonio, for appellants.

Barkley & Cutcher, James Cutcher, Taylor, Lee & Lee, Mason, Moursund & Ferguson, Thos. C. Ferguson, Johnson City, for appellees.

ARCHER, Chief Justice.

This is a suit by appellant Satterwhite for reformation and in the alternative to have cancelled a deed from Jeffie Henrietta Satterwhite to appellee Commercial Bank, at least insofar as the deed affected an undivided one fourth interest in a 921.78 acre ranch, in Bell County, Texas, claimed by appellant and for recovery of title.

Both appellant Satterwhite and appellee Bank filed motions for summary judgment.

Upon a hearing the trial court sustained appellee's motion and denied appellant all relief, including his motion for summary judgment, and judgment was entered against Bill H. Satterwhite and Maryland Casualty Company, the surety on his cost bond.

The land in litigation was the community property of David S. Satterwhite, deceased, and Jeffie Henrietta Satterwhite, the surviving widow.

David S. Satterwhite by his will left all of his property to his widow and two sons. The will, in essential parts, is as follows:

"SECOND. I desire to state that all of the property that I now own is the community property of myself and my wife, Jeffie Henrietta Satterwhite.

THIRD. I give, devise and bequeath all of my property, both real and personal, that I may die possessed of, of every nature and kind after payment of my just debts, to my beloved wife, Jeffie Henrietta Satterwhite, to have and to hold the same for and during her natural life, to use as she sees proper, with remainder over and after her death to our two children, namely, Bill H. Satterwhite and Clay T. Satterwhite, and such other children as may be born to us, and their legitimate bodily heirs, share and share alike.

FOURTH. And my wife, Jeffie Henrietta Satterwhite, shall use her own judgment and pleasure in making any advances, loans, or help to any of my children, and such advances, loans or help so made, shall be charged up to the one receiving same and shall be deducted in the

final settlement. I furthermore give my wife full authority to sell, transfer and assign any portion of my estate, real or personal, the purchaser shall be under no duty to see that the proceeds of the sale are disbursed in accordance with this will.

FIFTH. In the event of my wife's marriage, I desire and so will and direct, that all of my part of the estate on hand at the time of such marriage, be then divided equally among my surviving children or their legitimate bodily heirs."

Mrs. Satterwhite entered into a contract of sale with The Commercial Bank of "all her right, title and interest in and to" a certain 920 acres of land, more or less, for an agreed price of $26,000.00.

Mrs. Satterwhite executed a deed to appellee bank, which she signed individually only and which, except for formal parts and the description, is as follows:

"THE STATE OF TEXAS COUNTY OF BELL } KNOW ALL MEN BY THESE PRESENTS:

THAT I, Jeffie Henrietta Satterwhite, individually, and as Executrix of the estate of David S. Satterwhite, deceased, of the County of Bell, State of Texas, for and in consideration of the sum of TWENTY SIX THOUSAND AND NO/100 ($26,000.00) DOLLARS to me in hand paid by The Commercial Bank, Unincorporated of Mason, Texas, a partnership consisting of C. Victor Thornton, Lloyd Thornton and Ed H. Winton, Jr., the receipt of which is hereby acknowledged and for which no lien either express or implied is retained, have GRANTED, SOLD AND CONVEYED and by these presents do GRANT, SELL AND CONVEY unto the said The Commercial Bank, Unincorporated, a partnership consisting of C. Victor Thornton, Lloyd Thornton and Ed H. Winton, Jr.,

the following described tracts of land, to-wit:

\* \* \* \* \* \*

TO HAVE AND TO HOLD, the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said The Commercial Bank, Unincorporated, its successors and assigns forever. And I do hereby bind myself, my heirs, executors and administrators to WARRANT AND FOREVER DEFEND, all and singular the said premises unto the said The Commercial Bank, Unincorporated, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

On June 29, 1960, Clay T. Satterwhite and wife, Faye Jaurea Satterwhite, executed a deed of trust conveying to Ray Durst, Trustee, for The Commercial Bank, of "all my right, title and interest" in and to certain tracts of land, describing them.

On April 2, 1962, Clay T. Satterwhite deeded all of his right, title and interest in the subject lands to the Bank for a consideration of $10.00 and other valuable consideration paid. The amount of the total consideration was stated by Satterwhite in an affidavit to be about $17,400.00.

The appeal is founded on eleven points, the first eight points are interrelated and all pertain to the error of the trial court in sustaining the Bank's motion for summary judgment, and we will consider them together.

The Bank filed its motion for summary judgment which was opposed by appellant and on hearing such motion was granted.

A determination of this litigation depends upon a proper construction of the will of David S. Satterwhite, deceased.

As is to be observed from the wording of the will herein set out by the third paragraph, the testator gave all of his property to his wife "to have and to hold the same

for and during her natural life to use as she sees proper, with remainder over and after her death to our two children * *."

The fourth paragraph provides that Mrs. Satterwhite should use her own judgment in making any advances, loans or help to the children. "I furthermore give my wife full authority to sell, transfer and assign any portion of my estate, real or personal, the purchaser shall be under no duty to see that the proceeds of the sale are disbursed in accordance with this will."

The fifth paragraph of the will is as follows:

"In the event of my wife's marriage, I desire and so will and direct, that all of my part of the estate on hand at the time of such marriage, be then divided equally among my surviving children or their legitimate bodily heirs."

■ To determine the intention of the testator is the cardinal rule of the construction of any will. In doing so, the testator's general scheme and dominant purpose control.

Long v. Long, Tex.Civ.App., 252 S.W.2d 235, er. ref., n. r. e.

Our Supreme Court in McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412, stated that:

"In construing the will, all its provisions should be looked to, for the purpose of ascertaining what the real intention of the testatrix was; and, if this can be ascertained from the language of the instrument, then any particular paragraph of the will which, considered alone, would indicate a contrary intent, must yield to the intention manifested by the whole instrument."

Looney v. First Nat. Bank of Floresville, Tex.Civ.App., 322 S.W.2d 53, er. ref., n. r. e.

The Supreme Court in the case of Edds v. Mitchell, 1945, 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470, had before it a will similar in effect to the one under discussion here. The Court said in part:

"The intention of the testator, clearly expressed by Item Three of the will, that his wife should take only a life estate, is a fact of importance in determining the question presented for decision, which, as petitioner in his application for writ of error states, is whether the exercise by the life tenant of the power of sale given by Item Four of the will operated to divest the remaindermen of title to the proceeds of the sale. * * * The power of disposition is not an estate. It is merely authority derived from the will to dispose of the fee. (Citing case authority). * * * It is not inconsistent with or repugnant to the estate for life. 33 Am.Jur. pp. 484, 485, Sec. 21. It is not repugnant to the remainder, but when exercised, it defeats the remainder in the property sold or conveyed."

■ Colonel Satterwhite, the testator, vested limited power in Mrs. Satterwhite to sell the land by the use of the words "I furthermore give my wife full authority to sell, transfer and assign any portion of my estate, real or personal, the purchaser shall be under no duty to see that the proceeds of the sale are disbursed in accordance with this will."

■ It is apparent to us that the testator authorized a sale of "any portion" of his estate, if Mrs. Satterwhite in the use of her judgment, desired to make any advances, loans or help to any of the children.

■ We believe that the trial court erred in sustaining the Bank's motion for summary judgment, since, in our construction of the will of Colonel Satterwhite, the widow, Mrs. Satterwhite, was not authorized to make a conveyance of the land, and particularly that one fourth portion belonging to Bill H. Satterwhite, appellant, who as a matter of law, after the remarriage of

Mrs. Jeffie Henrietta Satterwhite to W. T. Chambers, was entitled to his share.

As we have stated, the Bank paid Clay T. Satterwhite in excess of $17,000.00 for an undivided one fourth interest in the land and paid Mrs. Jeffie Henrietta Satterwhite $26,000.00 for, according to the contract of sale, all of her right, title and interest in the lands.

No payment has been made by the Bank for the interest of Bill H. Satterwhite.

Mrs. Jeffie Henrietta Satterwhite, in a deposition, testified in part: Asked if she had had any unpleasantness with her sons at all, she answered, "They have created quite a bit." She said they had called her for their part of their daddy's estate. She also gave the shotgun away and other guns. She told Winton and Lee she had been offered $60,000.00 for the land by Mr. Roach but that he wanted the deed of trust and judgment against Clay's part of it removed; told him she had had this offer of $60,000.-00 for the whole place and told him she was willing to sell "my right, title and interest." Asked if she told Mr. Lee, the Bank's attorney, that what she wanted to do was sell her half interest in the property, her community one half, she answered, "I don't know that I ever said half interest. I believe I said interest."

"Q Isn't it true that Mr. Winton or Mr. Thornton or Mr. Lee or all of them told you that they would take care of the interest that these boys had and settle up with them?

A I feel sure that we discussed it."

Asked about her discussions with Winton and Lee, she said she was "actually interested in keeping that boy (Clay) out of the penitentiary" and they discussed Clay's part, she was sure, about the fact that they would have to buy his interest sooner or later, but is not sure about the other. She was taking less than half what she was offered for the property because "I wanted to get out of it; I wanted to get out of the whole thing. I just wanted to get relieved of the whole business. I felt like I had the money coming." Asked if all she was doing was just selling her interest, not purporting to sell any interest the boys might own, she said, "I agreed to sell my right, title and interest." She further testified:

"Q Your individual right, title and interest; that is correct, isn't it?

A Well, my right, title, and interest; that is all I know.

\* \* \* \* \* \*

Q And that was all that—you weren't purporting to sell any interest that they might have in the ranch, or the—that's right, isn't it?

A As I stated before, to my knowledge, I sold my right, title, and interest.

Q And——

A Whatever it might be.

Q And you did not sell, nor purport to sell, nor intend to sell their right, title, and interest; that was not the way the deal was explained to you, was it?

A Well, it was explained to me that I was selling my right, title, and interest, whatever it might be.

\* \* \* \* \* \*

Q Now, you have stated to other people, haven't you, that you sold your interest in the ranch, and that the boys could then fuss it out with the people that you had sold to, didn't you?

A Yes; I think I wrote that to what I thought was a friend of mine.

Q Well, you made that statement that —I have quoted you correctly, have I not; haven't you made that statement repeatedly?

A I have made a statement that I sold my interest.

Q  And also that the boys could fuss it out with the party you sold to?

A  They could fuss it out with whoever they were supposed to fuss it out."

 We believe that the will in its devising clauses does no more than give a life estate to Mrs. Satterwhite, with power of disposition as provided, of "any portion" for the purposes of making loans or advances to the two sons, and certainly does not give power to make a gift of appellant's interest. Hughes v. Beall, Tex.Civ.App., 264 S.W. 171, er. ref. n. r. e.; 57 Am.Jur., Wills, Sec. 1218, N. 5; Caples v. Ward, 107 Tex. 341, 179 S.W. 856; Ellis v. Bruce, Tex.Civ.App., 286 S.W.2d 645, er. ref. n. r. e.

 The fact that a life tenant is given a general power of disposal does not change the estate into something other than a life estate. Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823; Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588.

Appellee cites Long v. Long, Tex.Civ. App., 252 S.W.2d 235, er. ref. n. r. e.

The terms of the will in the Long case are broader than those in the Satterwhite will.

The case of Looney v. First National Bank of Floresville, Tex.Civ.App., 322 S. W.2d 53, er. ref. n. r. e., was a trespass to try title suit, and the holding is not controlling in this instant case.

The will in the case of Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876, was a joint will of T. M. Harrell and his wife, Maggie Harrell, and by its terms all of the testator's property was given to the survivor, for such survivor's sole use and benefit, and, provided for disposition of any remainder to others, and gave a conditional fee or defeasible fee and is not controlling in a construction of the Satterwhite will.

This Court in Maxwell v. Harrell, 183 S.W.2d 577, er. ref. w. m., considered a will in which the wife was given a life estate with power of sale and discussed the cases and law in connection with such bequests, and the sale only of the wife's interest.

The judgment of the trial court is reversed and judgment here rendered for the appellant for an undivided ¼ interest in the land.

Reversed and rendered.