

# Fourth Court of Appeals

## San Antonio, Texas

## DISSENTING OPINION

No. 04-17-00046-CV

**XTO ENERGY INC.** and Mobil Producing Texas and New Mexico, Inc.,
Appellants

v.

**EOG RESOURCES, INC.** and Reilly McNeel **DILLON**, et al.,
Appellees

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 14-08-0645-CVA
Honorable Russell Wilson, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice
Dissenting Opinion by:  Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice
                Irene Rios, Justice

Delivered and Filed:  April 4, 2018

By misconstruing the Disposition Clause as providing additional security to secure Hetherington's payment of the Notes, I believe the majority essentially gives no effect to the Disposition Clause, thereby rendering it meaningless.  Therefore, I must respectfully dissent.

### BACKGROUND

This appeal arises out of a dispute over the mineral estate underlying 1,653 acres in Atascosa and McMullen Counties ("the Property").  As pointed out by the majority, the crux of this appeal centers on the meaning and effect of the Disposition Clause contained in the Wofford Deed executed by Henry R. Wofford and his wife, Simona B. Wofford, individually and acting as

attorney-in-fact for C.S. Brodbent, Sr. and Irey Smith Brodbent, to Thomas Hetherington. Specifically, the parties dispute whether the subsequent conveyance of "[a]n undivided seven-eight[h]s (7/8ths)" of the mineral estate underlying the Property from Hetherington to Magnolia Petroleum Company as set out in the Hetherington Deed was subject to foreclosure, and thus, included in the foreclosure sale of the Property to Simona.

According to the McNeel Heirs, who are undisputedly the current successors-in-interest to Simona, the conveyance was subject to foreclosure because the Disposition Clause in the Wofford Deed and respective deed of trust did not authorize Hetherington to convey any interest in the Property free and clear of the vendor's lien retained in the Wofford Deed. As a result, they contend Hetherington could only convey an equitable interest to Magnolia Petroleum Company. Moreover, they contend the equitable interest acquired by Magnolia Petroleum Company was subject to foreclosure. The McNeel Heirs therefore conclude that they own the full mineral estate underlying the Property.

According to XTO, who is undisputedly the current successor-in-interest to Magnolia Petroleum Company, the conveyance to Magnolia Petroleum Company was not subject to foreclosure because under the plain meaning rule, the Disposition Clause in the Wofford Deed gave Hetherington the power to convey all of his right, title, and interest in the mineral fee estate underlying the Property unencumbered by the vendor's lien. XTO further argues Hetherington exercised this power when he executed the Hetherington Deed to Magnolia Petroleum Company, and as a result, XTO owns the full mineral estate underlying the Property.

**DISCUSSION**

***Whether the Wofford Deed Authorized Hetherington to Convey Any Interest in the Mineral***

***Estate Unencumbered by the Vendor's Lien***

According to the majority, XTO's argument that the Disposition Clause authorizes Hetherington to convey the mineral interest in the Property free and clear of the vendor's lien fails to harmonize all the provisions in the Wofford Deed. The majority believes XTO's argument gives the Disposition Clause a controlling effect which creates an inconsistency between the effect of the vendor's lien and the 1/8th royalty the Disposition Clause requires Hetherington to retain. The majority holds the Disposition Clause does not authorize Hetherington to convey a mineral interest free and clear of the vendor's lien, but instead creates additional security in the nature of a 1/8th royalty in the event Hetherington conveys the mineral interest. I disagree with the majority's holding for two reasons.

First, the majority's interpretation is premised on the idea that property already acting as security under the vendor's lien will also act as "additional" security should Hetherington choose to convey "[a]n undivided seven-eight[h]s 7/8ths" of the minerals. It is undisputed and acknowledged by the majority that the vendor's lien retained in the Wofford Deed is against all the "above described Property" – both surface and minerals – securing the Notes until such Notes are paid in full. Thus, contrary to the majority's interpretation, the same property cannot act as additional security when it is already acting as security under the vendor's lien. Rather, the only way the 1/8th royalty referenced to be retained in the Disposition Clause could act as additional security would be if that interest was not originally security under the vendor's lien.

Second, and more importantly, I believe the majority's interpretation renders the Disposition Clause meaningless as it fails to recognize the absolute and unlimited power of

disposition clauses. *See Edds v. Mitchell*, 143 Tex. 307, 311, 184 S.W.2d 823, 825 (1945). Although the majority correctly cites the four corners rule and the harmonization principles required to be applied when determining a deed's meaning, nowhere in its analysis does it recognize the absolute and unlimited effect of a disposition clause. *Graham v. Prochaska*, 429 S.W.3d 650, 655 (Tex. App.—San Antonio 2013, pet. denied) (citing *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)); *Hausser v. Cuellar*, 345 S.W.3d 462, 466 (Tex. App.—San Antonio 2011, pet. denied) (en banc) (same). "The power of disposition is not an estate. It is merely authority derived from [an instrument] to dispose of the fee." *Edds*, 184 S.W.2d at 825. With that said, Texas courts have generally interpreted a power of disposition as an *absolute and unlimited* power that grants a party the right to dispose of certain interests *however that party chooses*. *See Dickerson v. Keller*, 521 S.W.2d 288, 291 (Tex. App.—Texarkana 1975, writ. ref'd n.r.e.) (emphasis added). This is because in most cases, the language used to determine the extent of a power of disposition typically involves language such as "with full power to dispose of," "absolutely to dispose of … according to her pleasure," or "as such survivor may desire." *See id.* (citing *Lowe v. Ragland*, 156 Tex. 504, 297 S.W.2d 668 (1957); *Edds*, 184 S.W.2d at 823; *Hanna v. Ladewig*, 73 Tex. 37, 11 S.W. 133 (1889); *Cammack v. George*, 377 S.W.2d 687 (Tex. Civ. App.—Beaumont 1964, writ ref'd n.r.e.); *Ellis v. First Nat'l Bank in Dallas*, 311 S.W.2d 916 (Tex. Civ. App.—Dallas 1958, writ ref'd n.r.e.); *Odell v. Odell*, 306 S.W.2d 914 (Tex. Civ. App.—Fort Worth 1957, writ ref'd n.r.e.); *Johnson v. Johnson*, 306 S.W.2d 780 (Tex. Civ. App.—Amarillo 1957, writ ref'd); *Randall v. Estes*, 218 S.W.2d 338 (Tex. Civ. App.—Dallas 1949, writ ref'd n.r.e.) *Young v. Campbell*, 175 S.W. 1100 (Tex. Civ. App.—Dallas, 1915, writ ref'd); *Harrell v. Hickman*, 147 Tex. 396, 215 S.W.2d 876 (1948); *Kilpatrick v. Cassel*, 19 S.W .2d 805 (Tex. Civ. App.—Texarkana 1929, no writ); *Johnson v. Kirby*, 193 S.W. 1074 (Tex. Civ. App. 1917, writ

ref'd); and *Feegles v. Slaughter*, 182 S.W. 10 (Tex. Civ. App.—Dallas 1915, writ ref'd)).  Texas

courts have further recognized that restrictions on a power of disposition only occur in cases where

it is clear that after examining and considering the entire instrument, the parties did not contemplate

the power to be absolute and unlimited.  *See id.* (citing *Murphy v. Slaton*, 154 Tex. 35, 273 S.W.2d

588 (1954) and *Gibony v. Hutcheson*, 20 Tex. Civ. App. 581, 50 S.W. 648 (1899, no writ)).

Here, in addition to retaining a vendor's lien on the Property, the Wofford Deed includes

such a disposition clause, which provides:

It is further agreed and stipulated that grantee [Hetherington] may make such disposition of seven-eight[h]s (7/8) of the mineral rights as he may deem fit, however, it [is] further provide[d] that the usual one-eighth (1/8) royalty will be retained against the land for the protection of the holder or holders of the note, until the entire balance against the land shall have been fully paid, with all interest thereon.

To determine the extent of this power of disposition and whether it authorizes Hetherington

the power to convey an interest in the Property unencumbered by the vendor's lien, we must apply

the four corners rule and examine and consider the entire instrument, harmonizing and giving

effect to all of the instrument's provisions.  *See Graham*, 429 S.W.3d at 655; *Hausser*, 345 S.W.3d

at 466.  Here, the provision unambiguously provides that Hetherington may dispose of "seven-

eights (7/8) of the mineral rights as he may deem fit" – in other words, as he chooses.  The

provision then specifies how much interest Hetherington would be required to retain for security

purposes if he chose to exercise his right to convey "seven-eight[h]s (7/8) of the mineral rights."

The provision provides that Hetherington must retain "the usual one-eighth (1/8) royalty against

the land for the protection of the holder or holders of the note, until the entire balance against the

land shall have been fully paid, with all interest thereon."[1]  By specifying the amount of interest

---

[1] We note that the amount of interest Simona required Hetherington to retain is a term non-participating royalty interest, which was to remain in effect until the indebtedness was satisfied.  *See* Ernest E. Smith and Jacqueline Lang Weaver, Texas Law of Oil and Gas §§ 2.4(A) and 2.4(B)(2) (2nd Ed. 2015) (explaining the duration of a non-participating royalty may be perpetual or limited to a defined period of time based on language used when described).

Hetherington had to retain to secure the vendor's lien, Simona unambiguously authorized Hetherington to convey "seven-eight[h]s (7/8) of the mineral rights" free and clear from the vendor's lien. Otherwise, the language requiring Hetherington to retain "the usual one-eighth (1/8) royalty against the land" for security purposes would be unnecessary and superfluous. Here, Simona unambiguously provides how much and what type of interest must be retained for security purposes because she is granting Hetherington the full and absolute power to convey "seven-eights (7/8) of the mineral rights" unencumbered by the lien.

Accordingly, I would hold the power of disposition authorized Hetherington to convey seven-eighths (7/8th) of the mineral rights unencumbered by the lien. A review of the early chain of title shows that Hetherington exercised this power when he executed the Hetherington Deed to Magnolia Petroleum Company. Thereafter, when Hetherington defaulted on the notes only the encumbered interests in the Property were subject to foreclosure. Because the seven-eighths (7/8th) mineral interest was conveyed to Magnolia Petroleum Company prior to the foreclosure under the power of disposition provision of the deed of trust, that interest was no longer encumbered. Therefore, I would further hold the foreclosure sale did not extinguish Magnolia Petroleum Company's legal title to the seven-eighths (7/8th) mineral interest because it was unencumbered by the lien.

### *Whether the Hetherington Deed Conveyed All Right, Title and Interest in the Mineral Fee Estate to Magnolia Petroleum Company*

Having concluded the conveyance by Hetherington to Magnolia Petroleum Company was not extinguished by the foreclosure sale, I next consider the amount of interest Hetherington conveyed to Magnolia Petroleum Company. According to XTO, pursuant to the Wofford Deed, Hetherington was authorized to dispose of the full mineral estate, being described as "seven-

eight[h]s (7/8) of the mineral rights," and he did so when he described that same interest in the Hetherington Deed as "[a]n undivided seven-eight[h]s (7/8ths)," being "[a]ll the oil and gas." XTO supports its position by pointing to the historically accepted vernacular of the time and the fact that the Hetherington Deed makes no mention of a mineral reservation. In response, the McNeel Heirs assert that if Hetherington had the power to convey title to the mineral interest, he conveyed only seven-eighths (7/8ths) of the mineral estate and kept one-eighth (1/8th) of the mineral estate, which Simona, subsequently foreclosed upon and which later passed to them as Simona's successors-in-interest.

To ascertain the amount of interest Hetherington intended to convey to Magnolia Petroleum Company, I again apply the four corners rule to ascertain the parties' intent. I examine and consider the entire instrument, harmonizing and giving effect to all of the instrument's provisions. *See Graham*, 429 S.W.3d at 655; *Hausser*, 345 S.W.3d at 466. "The intent that governs, however, is not the intent that the parties meant but failed to express, but the intent that is expressed." *Griswold v. EOG Res., Inc.*, 459 S.W.3d 713, 717 (Tex. App.—Texarkana 2015, no pet.). Here, the conveyance is described as follows:

> An undivided seven-eight[h]s (7/8ths).
> All the oil and gas and oil and gas rights and other mineral and mineral rights in and under and that they may be produced from the [Property]…

I conclude a plain and ordinary meaning of the phrase "an undivided seven-eight[h]s (7/8th)" refers to seven-eighths (7/8ths) of the mineral rights in the Property as opposed to all of the mineral rights in the Property. This interpretation is further supported when considering the next phrase in the instrument. After describing the amount of interest conveyed, the deed goes on to describe the type of interest conveyed, being an interest in "[a]ll the oil and gas and oil and gas

rights." In other words, being an interest in the mineral estate as opposed to the surface estate or a royalty interest.

XTO's argument that the phrase "an undivided seven-eight[h]s (7/8ths)" refers to the full mineral estate is based on the estate misconception theory, which "refers to the once-common misunderstanding (perpetuated by antiquated judicial authority) that a landowner retained only 1/8 of the minerals in place after executing a mineral lease instead of a fee simple determinable with the possibility of reverter in the entirety." *Hysaw v. Dawkins*, 483 S.W.3d 1, 10 (Tex. 2016). In other words, the landowner believed – albeit, mistakenly – that in executing a mineral lease, the landowner conveyed seven-eighths (7/8th) of the minerals in place.

Although I recognize the existence of the estate misconception theory and the attempt by legal scholars and court opinions to refer to the theory when construing oil and gas interests, the Texas Supreme Court has pointed out there is "no discernable unifying principle [in deed construction cases] except to the extent the outcome derives from the conveying instrument's specific language." *Id.* at 11. Moreover, this case does not involve a double fraction issue – which is the type of issue the estate misconception theory is commonly used to resolve. *See id.* at 10-12. On the contrary, the Hetherington Deed involves the interpretation of a single fraction conveyance, which I conclude is an outright conveyance of seven-eighths (7/8th) of the mineral fee estate as opposed to the full mineral fee estate. Such an interpretation does not require use of the estate misconception theory, but rather a holistic approach of giving words their plain and ordinary meaning as expressed by the parties. *See id*. at 13.

I therefore conclude that Hetherington conveyed seven-eighths (7/8ths) of the mineral fee estate underlying the Property to Magnolia Petroleum Company, which subsequently passed to XTO, Magnolia Petroleum Company's successor-in-interest. Hetherington, however, retained

one-eighth (1/8th) of the mineral estate, which as explained above, was subject to foreclosure and ultimately conveyed to Simona in the substitute trustee's deed.

## CONCLUSION

Based on the foregoing, I would hold the power of disposition language as set out in the Wofford Deed and deed of trust gave Hetherington the power to convey "seven-eight[h]s (7/8) of the mineral rights" unencumbered by the vendor's lien, and therefore, the foreclosure did not extinguish the legal title Hetherington conveyed to Magnolia Petroleum Company. I would further hold that Hetherington conveyed to Magnolia Petroleum Company an undivided seven-eighths (7/8ths) of the mineral fee estate as opposed to the full mineral fee estate underlying the Property. Accordingly, I would reverse the trial court's summary judgment granted in favor of appellees and render judgment that XTO owns an undivided seven-eighths (7/8ths) in the subject mineral estate and the McNeel Heirs own an undivided one-eighth (1/8th) in the subject mineral fee estate. Because the majority holds the contrary, I respectfully dissent.

Marialyn Barnard, Justice